In the Matter of GIBSON PRODUCTS OF ARIZONA, a limited partnership, Debtor.

ARIZONA WHOLESALE SUPPLY CO.,
Petitioner-Appellee,

v.

George J. ITULE, Respondent-Appellant.

No. 74–1675.

United States Court of Appeals,
Ninth Circuit.

Aug. 13, 1976.

Rehearing Denied Oct. 15, 1976.

Lawrence Ollason, Tucson, Ariz., for appellant.

G. F. Randolph, Phoenix, Ariz., for appellee.

Before HUFSTEDLER and GOODWIN, Circuit Judges, and WHELAN,* District Judge.

HUFSTEDLER, Circuit Judge:

On this appeal we must referee a collision between the "proceeds" provision of the Uniform Commercial Code (U.C.C. § 9–306(4), A.R.S. § 44–3127(D)[1]) and the bank-

---

1. For convenience, we refer hereafter solely to U.C.C. § 9–306, rather than to the Arizona statute adopting the U.C.C. We also use the text of U.C.C. § 9–306 prior to the 1972 amendments because Arizona did not adopt the 1972 amendments until 1975, effective January 1, 1976, a date long after this litigation began. (Arizona Laws of 1975, Ch. 65.) The 1972 amendments, even if applicable, do not affect the issues in this case.

In pertinent part, U.C.C. § 9–306 provided:

"(1) 'Proceeds' includes whatever is received when collateral or proceeds is sold, exchanged, collected or otherwise disposed of. The term also includes the account arising when the right to payment is earned under a contract right. Money, checks and the like are 'cash proceeds'. All other proceeds are 'non-cash proceeds'.

(2) Except where this Article otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof by the debtor unless his action was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor.

(3) The security interest in proceeds is a continuously perfected security interest if the interest in the original collateral was perfected but it ceases to be a perfected security interest and becomes unperfected ten days after receipt of the proceeds by the debtor unless

ruptcy trustee's power to avoid preferences under Section 60 of the Bankruptcy Act.[2] The provisions collide under circumstances that place the creditor, asserting a perfected security interest in the debtor's bank account, in the dimmest equitable light: If the creditor prevails, it receives $19,505.27 from the debtor's account on proof that the debtor, within ten days of the insolvency, deposited $10 in the account from the sale of a hair dryer in which the creditor had a perfected security interest. The district court affirmed the bankruptcy judge's order awarding $19,505.27 to the secured creditor. We reverse because we conclude that the operation of U.C.C. Section 9–306(4)(d) created a voidable preference by

the transfer to the creditor of a perfected security interest in the cash deposited in the debtor's account that exceeded the amount of the creditor's proceeds.

The creditor, Arizona Wholesale Supply Co. ("Wholesale") sold General Electric and Proctor-Silex appliances to the debtor, Gibson Products of Arizona ("Gibson"). Wholesale has a perfected security interest in the appliances. On January 13, 1972, Gibson initiated Chapter XI proceedings. During the ten-day period immediately preceding the institution of these proceedings, Gibson deposited $19,505.27 in its bank account. During the same period, Gibson deposited in the account $10 from the sale of a Proctor-Silex dryer.[3] At the time in-

---

(a) a filed financing statement covering the original collateral also covers proceeds; or (b) the security interest in the proceeds is perfected before the expiration of the ten day period.

(4) In the event of insolvency proceedings instituted by or against a debtor, a secured party with a perfected security interest in proceeds has a perfected security interest (a) in identifiable non-cash proceeds; (b) in identifiable cash proceeds in the form of money which is not commingled with other money or deposited in a bank account prior to the insolvency proceedings; (c) in identifiable cash proceeds in the form of checks and the like which are not deposited in a bank account prior to the insolvency proceedings; and (d) in all cash and bank accounts of the debtor, if other cash proceeds have been commingled or deposited in a bank account, but the perfected security interest under this paragraph (d) is (i) subject to any right of set-off; and (ii) limited to an amount not greater than the amount of any cash proceeds received by the debtor within ten days before the institution of the insolvency proceedings and commingled or deposited in a bank account prior to the insolvency proceedings less the amount of cash proceeds received by the debtor and paid over to the secured party during the ten day period."

2. The impending collision between U.C.C. § 9–306(4)(d) and Bankruptcy Act § 60, 11 U.S.C. § 96, has been the subject of much scholarly debate:

4A Collier on Bankruptcy, ¶ 70.62A[4.3] (14th ed. J. Moore & J. King 1976); 2 G. Gilmore, Secured Interests in Personal Property, § 45.9 (1965); Coogan & Vagts, "The Secured Creditor and the Bankruptcy Act: An Introduction," in 1 P. Coogan, W. Hogan & D. Vagts, Secured Transactions under the Uni-

form Commercial Code § 9.03[3][b][iii] (1968); Countryman, "Code Security Interests in Bankruptcy," 4 U.C.C.L.J. 35, 40–49 (1971); Duesenberg, "Lien or Priority under Section 10, Uniform Trust Receipts Act," 2 B. C.Ind. & Com.L.Rev. 73 (1960); Epstein, " 'Proceeding' Under the Uniform Commercial Code," 30 Ohio State L.J. 787, 796–808 (1969); Gillombardo, "The Treatment of Uniform Commercial Code Proceeds in Bankruptcy: A Proposed Redraft of Section 9–306," 38 U.Cinc.L.Rev. 1, 7–13, 22–30 (1969); Hawkland, "The Proposed Amendments to Article 9 of the U.C.C., Part II Proceeds," 77 Com.L.J. 12, 18–19 (1972); Henson, " 'Proceeds' Under the Uniform Commercial Code," 65 Colum.L.Rev. 232, 242–53 (1965); Kennedy, "The Impact of the Uniform Commercial Code on Insolvency: Article 9," 67 Com.L.J. 113, 116–17 (1962); Kennedy, "Trustee in Bankruptcy Under the Uniform Commercial Code: Some Problems Suggested by Articles 2 and 9," in 1 P. Coogan, W. Hogan & D. Vagts, *supra*, § 10.03[3] (1968); Levy, "Effect of the Uniform Commercial Code Upon Bankruptcy Law and Procedure," 60 Com.L.J. 9, 11–12 (1955); Marsh, "Triumph or Tragedy?: The Bankruptcy Act Amendments of 1966," 42 Wash.L.Rev. 681, 715–17 (1967); Comment, "The Commercial Code and the Bankruptcy Act: Potential Conflicts," 54 N.W.U.L.R. 411, 420–24 (1958); Comment, "Toward Commercial Reasonableness: An Examination of Some of the Conflicts Between Article 9 of the Uniform Commercial Code and the Bankruptcy Act," 19 Syr.L.Rev. 939, 954–55 (1968); Marsh, "Book Review," 13 U.C.L.A.L.Rev. 898, 907–09 (1966).

3. No other sales during the 10-day period were proved, regardless of the disposition of the proceeds. Under these circumstances, some alternative interpretations of U.C.C. § 9–306(4)(d)

solvency proceedings were instituted, Gibson was indebted to Wholesale in the amount of $28,800 for the appliances it had sold to Gibson and for which it has perfected security interests.

Before we turn to the interesting problem created by the interplay of U.C.C. Section 9–306(4)(d), we net one red herring. Wholesale claimed an interest in Gibson's bank account based on the garnishment it levied on the account on January 12, 1972, pursuant to which the bank temporarily sequestered $21,843.31. The bank later paid over that sum, as well as the remainder of the account, to the receiver. The garnishment did nothing for Wholesale because its garnishment lien was voidable under Section 67a of the Bankruptcy Act, and the trustee voided it. (4 Collier on Bankruptcy, ¶ 67.10, at 130–36 (14th ed. J. Moore & J. King 1976).)

The proceeds section of the Code generally follows the pre-Code law that a security interest continues in any identifiable proceeds received by the debtor from the sale or other disposition of the collateral. The Code's new twist is extending the creditor's security interest to commingled funds without specifically tracing the creditor's proceeds into the fund, when the debtor has become insolvent. (U.C.C. § 9–306(4)(d).) No collision between the proceeds provision of the Code and the preference sections of the Bankruptcy Act occurs when the creditor's perfected security interest in his collateral is attached to the proceeds from the sale or other disposition of the collateral if (1) his interest was initially perfected in the collateral more than four months before bankruptcy, and (2) he can identify the proceeds to which his security interest has attached. Under these circumstances, the creditor has priority over later creditors when he first perfected his security interest, and his priority relates back to his initial perfection. (*Cf. DuBay v. Williams* (9th Cir. 1969) 417 F.2d 1277, 1286–87.) The problem arises in the U.C.C. Section 9–306(4)(d) situation because that subsection gives the secured creditor a perfected security interest in the entire amount deposited by the debtor within ten days before bankruptcy without limiting the interest to the amount that can be identified as the proceeds from the sale of the creditor's collateral. With respect to the funds that are not the creditor's proceeds, the creditor has no security interest except that conferred by U.C.C. Section 9–306(4)(d). His interest in these nonproceeds arises upon the occurrence of two events: (1) insolvency proceedings instituted by or against a debtor, and (2) commingling of some of the proceeds from his collateral with the debtor's cash on hand or with other deposits in his debtor's bank account. His security interest is limited to an "amount not greater than the amount of any cash proceeds received by the debtor within ten days before institution of the insolvency proceedings" and is subject to the additional set-offs in Section 9–306(4)(d).

The draftsmen's intent was not to deliver a security bonanza to any secured creditor. As Professor Gilmore observes: "It goes without saying that a provision of state law which purported to give a secured creditor greater rights in the event his debtor's estate was administered in bankruptcy than he would have apart from bankruptcy would be invalid. However, . . . § 9–306(4) does not in the least aim at such a result. Indeed, § 9–306(4) is the reverse of such a statute, since it sharply cuts back the secured party's rights when insolvency proceedings are initiated." (2 G. Gilmore, Security Interests in Personal Property ¶ 45.9, at 1337–38 (1965).) The intent was to eliminate the expense and nuisance of tracing when funds are commingled and to limit the grasp of secured creditors to the amount received during the last ten days before insolvency proceedings, which, the draftsmen assumed, would usually be less than the same creditor could

---

were not advanced and are not before us. Wholesale tried, but failed to prove that the proceeds from the sale of some television sets

were also deposited in the account during the ten-day period.

trace if he had a grip on the entire balance deposited over an unlimited time. (*Id.* at 1340.) On that assumption, awarding a perfected security interest to the secured creditor, good for a short time on the entire balance, gives the secured creditor no windfall to the detriment of general creditors. On our facts, the contrary is true.

When confronted with an analogous situation, the Seventh Circuit limited the secured creditor's interest to those proceeds in the bank account traceable to the sale of the creditor's collateral. The Seventh Circuit's theory was that the term "any cash proceeds" used in Section 9–306(4)(d) does not refer to all receipts from any source deposited in the bank account, but, instead, refers to "proceeds" as defined in Section 9–306(1), and thus the phrase means "cash proceeds from the sale of collateral in which the creditor had a security interest." (*Fitzpatrick v. Philco Finance Corp.* (7th Cir. 1974) 491 F.2d 1288, 1291–92.)

■ Although we reach a similar result, we reject the Seventh Circuit's reasoning because, in our view, that construction impermissibly bends the language and structure of Section 9–306. The general definition of "proceeds" in Section 9–306(1) cannot be transplanted into Section 9–306(4) shorn of its statutory freight. The statute divides "proceeds" into two categories, "identifiable" and "commingled," *i. e.,* nonidentifiable proceeds, and alters the reach of a perfected security interest, depending upon whether the proceeds are identifiable or nonidentifiable. (*Compare* § 9–306(4)(a), (b), (c) *with* § 9–306(4)(d).) Section 9–306(4)(d) deals only with nonidentifiable cash proceeds. If the cash proceeds could be "identified," *i. e.,* had not been commingled, the secured party would have a perfected security interest in the whole fund under Section 9–306(4)(b), just as he did in pre-Code days, without any of the limitations imposed by Section 9–306(4)(d). Under the Code scheme, the secured creditor also has a perfected security interest under subsection (d) when he cannot identify his proceeds in the commingled fund, as long as he can show that some of his proceeds were among those in the commingled fund. (See Section 9–306, Comment *in* U.C.C.Rep. Serv., Current Materials, ¶ 9306, at 60 (1968); Gilmore *supra,* § 45.9, at 1336–37.)

We leave the language of Section 9–306(4) as it was drafted and apply Section 60 of the Bankruptcy Act to resolve the problem. As defined by Section 60a(1), a preference is "[1] a transfer . . . of the property of a debtor [2] to or for the benefit of a creditor [3] for or on account of an antecedent debt, [4] made or suffered by such debtor while insolvent and [5] within four months before the filing . . . [of bankruptcy], [6] the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class." Section 60a(2) of the Bankruptcy Act provides that "a transfer of property . . . shall be deemed to have been made or suffered at the time when it became so far perfected that no subsequent lien upon such property obtainable by legal or equitable proceedings on a simple contract could become superior to the rights of the transferee." As we held in *DuBay v. Williams, supra,* 417 F.2d at 1287:

"'Transfer' for the purpose of section 60a(2) is thus equated with the act by which priority over later creditors is achieved and not with the event which attaches the security interest to a specific account."

■ With respect to Wholesale's security interest in the proceeds from the sale of the collateral, no later creditor could obtain priority over Wholesale from the time its financing statement was filed and further perfected pursuant to Section 9–306(3), at least until Wholesale's proceeds were commingled with that of other secured creditors or with cash from other sources deposited in Gibson's bank account. Wholesale's security interest in those proceeds relates back to its initial financing statement. (*Cf. DuBay v. Williams, supra,* 417 F.2d at 1287–88.) However, Wholesale had no interest in cash other than its own proceeds, and hence no priority over later creditors in such cash, until (1) some part of Wholesale's proceeds

were deposited with other cash in Gibson's bank account, (2) within ten days of Gibson's filing its Chapter XI petition. The effect of Section 9–306(4) is thus to transfer to Wholesale a security interest in the cash in Gibson's bank account which does not derive from the sale of its collateral. In this situation, the act that gives Wholesale priority and the events that attach the security interest to the questioned asset occur at the same time. The transfer cannot occur earlier than ten days before the institution of bankruptcy. The transfer of the excess, above the wholesaler's proceeds, is a preference unless we can say that the transfer was neither for nor on account of an antecedent debt. We cannot avoid the conclusion that the transfer was on account of an antecedent debt. Wholesale could not qualify for Section 9–306(4) treatment absent the antecedent debt; moreover, the transfer does not happen unless the debt owed exceeds the payments made to the creditor during the ten-day period before the bankruptcy petition has been filed.

The result is that Wholesale cannot successfully assert its claim under U.C.C. Section 9–306(4)(d) to thwart the trustee's power to set that interest aside as a preference. However, the conclusion does not necessarily also follow that the creditor loses his security interest both in the proceeds from the sale of his collateral and in the nonproceeds in the debtor's bank account. In his contest with the trustee, he only loses his claim to the amounts in excess of his proceeds because only that amount is a preference. His security interest in the whole account, subject to the limitations of U.C.C. Section 9–306(4), is valid except that the trustee can avoid it. To the extent that a creditor is able to identify his proceeds to trace their path into the commingled funds, he will be able to defeat *pro tanto* the trustee's assertion of a preference.

By this construction of Section 60 of the Bankruptcy Act and Section 9–306(4) of the U.C.C., we do violence neither to statute nor to substantial justice among the parties. The creditor's security interest in the whole account under Section 9–306(4) is *prima facie* valid, except as to the trustee, and, as to him, the creditor's security interest is presumptively preferential. The creditor can rebut the presumption by appropriately tracing his proceeds. We think that it is fair to place the burden on the creditor to identify his own proceeds and thus to defeat, in whole or in part, the trustee's claim of preference. The creditor is in a better position than the trustee to trace his proceeds; moreover, if the creditor wants to avoid both the limitations of U.C.C. Section 9–306(4)(d) and the burden of proof in a potential contest with the trustee, all he needs to do is to prevent commingling of his proceeds and thus to follow U.C.C. Section 9–306(4)(a)–(c).

Reversed and remanded for further proceedings consistent with the views herein expressed.