**In re DEXTER BUICK–GMC TRUCK COMPANY, Debtor.**

**GENERAL MOTORS ACCEPTANCE CORPORATION, Plaintiff,**

v.

**James L. TAFT, Jr., Receiver, Defendant.**

**Bankruptcy No. BK–79–146.**

United States Bankruptcy Court, D. Rhode Island.

Jan. 18, 1980.

Anthony G. Iannuccillo, Providence, R. I., for plaintiff.

Taft, McSally & McKenna, Providence, R. I., for defendant.

1. For convenience, we refer hereafter solely to the Uniform Commercial Code (U.C.C.) rather

## DECISION

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

Heard on the complaint of General Motors Acceptance Corporation (GMAC) to impress a trust upon funds on deposit in the Debtor's corporate checking account.

The relevant facts are undisputed. In 1962, the plaintiff, GMAC, and Elliot Buick Inc., the predecessor of the Debtor, Dexter Buick, executed a security agreement covering new and used vehicles, and the proceeds from the sale of these vehicles. (Plaintiff's Exhibit No. 1). The requisite provisions of the Uniform Commercial Code [1] were complied with, and the security interest in the collateral was perfected. Within the ten days preceding the filing of its Chapter XI petition, the Debtor sold a number of vehicles in which GMAC had a security interest, and deposited the cash proceeds of these sales ($363,026) in its corporate checking account. These proceeds were commingled with other funds in the Debtor's account, and a number of checks were drawn against that account. On the date of the filing of the petition, the corporate checking account contained approximately $205,000.

GMAC contends that the funds in the bank account of the Debtor on the date of the filing are cash proceeds from the sale of the vehicles in which it had a perfected security interest, and claims that this security interest arises under UCC 9–306(4)(d), which provides:

"In the event of insolvency proceedings instituted by or against a debtor, a secured party with a perfected security interest in proceeds has a perfected security interest; . . . (d) in all cash and bank accounts of the debtor, if other cash proceeds have been commingled or deposited in a bank account, but the perfected security interest under this paragraph (d) is . . . (ii) limited to an amount not

than to the Rhode Island statute adopting the U.C.C., Title 6A R.I. General Laws 1956.

greater than the amount of any cash proceeds received by the debtor within ten days before the institution of the insolvency proceedings and commingled or deposited in a bank account prior to the insolvency proceedings . . .[2]

The receiver opposes the plaintiff's arguments on several grounds, his major contention being that the plaintiff's alleged security interest in the Debtor's bank account constitutes a voidable preference under § 60a of the Bankruptcy Act, 11 U.S.C. 96(a), because it did not arise, under UCC 9–306(4)(d), until the filing of the Chapter XI petition. The receiver further asserts that UCC 9–306(4)(d) creates a statutory lien or a disguised state priority which may be invalidated under the Bankruptcy Act.

The issue is whether the security interest which the plaintiff claims under UCC 9–306(4)(d) is able to withstand collision with the pertinent provisions of the Bankruptcy Act.

The receiver's first contention, that the operation of UCC 9–306(4)(d) constitutes a voidable preference, is based on § 60a of the Bankruptcy Act. Section 60a(1) defines a preference as

"[1] a transfer . . . of any of the property of a debtor [2] to or for the benefit of a creditor [3] for or on account of an antecedent debt, [4] made or suffered by such debtor while insolvent and [5] within four months before the filing . . . [6] the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class."

Section 60a(2) determines when a transfer has been made:

"[A] transfer of property . . . shall be deemed to have been made or suffered at the time when it became so far perfected that no subsequent lien upon such

property obtainable by legal or equitable proceedings on a simple contract could become superior to the rights of the transferee."

The receiver contends that a transfer took place as of the filing of the Debtor's petition, because it is at that point in time that GMAC's security interest in the Debtor's bank account was perfected under UCC 9–306(4)(d). The receiver does not dispute that GMAC has a security interest in identified proceeds from the sale of the vehicles under the original security agreement with the Debtor, which was perfected prior to the four month statutory period for a voidable preference. Rather, he contends that GMAC is asserting a security interest in *all* cash deposited in the Debtor's bank account within ten days of the filing of the petition, not simply in identifiable proceeds stemming from the sale of vehicles under the original security agreement. Under § 60a(2) of the Bankruptcy Act, a transfer is essentially equated with the act by which priority is obtained over later creditors. *DuBay v. Williams*, 417 F.2d 1277, 1287 (9th Cir., 1969). A creditor attaching the bank account of the Debtor the day prior to the filing of the petition, the receiver asserts, could have obtained a lien on the Debtor's bank account superior to GMAC's. He then argues that because GMAC's security interest did not become perfected under UCC 9–306(4)(d) until the initiation of the insolvency proceeding a transfer took place at that time, for the benefit of a creditor, in payment of an antecedent debt, and made while the Debtor was insolvent—a voidable preference under § 60a of the Bankruptcy Act.

The apparent conflict between UCC 9–306(4)(d) and § 60 of the Bankruptcy Act, which has been the subject of much scholar-

**2.** UCC 9–306(4) sets out four types of security interest which arise in the event of insolvency proceedings. Subsections (a), (b), and (c) give a secured party with a perfected security interest in proceeds a perfected security interest in identifiable non-cash proceeds, identifiable cash proceeds in the form of money not com-

mingled in the debtor's bank account, and in identifiable cash proceeds in the form of checks not deposited in a bank account. Subsection (d), which is at issue in this case, applies where cash proceeds in which the secured party has a perfected security interest are commingled or deposited in a bank account.

ly debate,[3] generally arises when a secured creditor asserts a right to both proceeds and other cash deposited in the Debtor's bank account. While the intent of the draftsmen of the Uniform Commercial Code in promulgating 9–306(4)(d) was to limit the expense and necessity of tracing proceeds that have been commingled with other funds, the literal effect of UCC 9–306(4)(d) is to give the secured party a security interest in all cash and deposits received by the debtor within ten days of the filing of the bankruptcy petition, even though some of those proceeds may not have resulted from the sale of secured collateral. As one court described this conflict,

"[T]he problem arises in the U.C.C. Section 9–306(4)(d) situation because that subsection gives the secured creditor a perfected security interest in the entire amount deposited by the debtor within ten days before bankruptcy without limiting the interest to the amount that can be identified as the proceeds from the sale of the creditor's collateral."

*In re Gibson Products*, 543 F.2d 652, 655 (9th Cir., 1976).

The cases where the problem of interpreting UCC 9–306(4)(d) in conjunction with the Bankruptcy Act has arisen have generally involved the situation where a secured creditor is able to trace only a small amount of cash proceeds from the sale of collateral in which the creditor has a perfected security interest into the Debtor's bank account, and attempts to use UCC 9–306(4)(d) to claim all of the funds deposited in the account within ten days of the commencement of the insolvency proceeding. *See, In re Gibson Products, supra; Fitzpatrick v. Philco Finance Corp.*, 491 F.2d 1288 (7th Cir., 1974). The approach adopted by these courts has been to allow the secured party to recover funds in the debtor's bank account to the extent that the creditor can trace those proceeds from the sale of collateral in which it had a perfected security interest. In *In re Gibson Products*, for example, the court held that

" . . . To the extent that a creditor is able to identify his proceeds to trace their path into the commingled funds, he will be able to defeat pro tanto the trustee's assertion of a preference.

By this construction of Section 60 of the Bankruptcy Act and Section 9–306(4) of the U.C.C., we do violence neither to statute nor to substantial justice among the parties. The creditor's security interest in the whole account under Section 9–306(4) is prima facie valid, except as to the trustee, and, as to him, the creditor's security interest is presumptively preferential. *The creditor can rebut the presumption by appropriately tracing his proceeds."* *Supra* at 657 (emphasis added)

The approach adopted by the *Gibson* court, which we find most persuasive, essentially adopts the pre-Code requirement of tracing cash proceeds from the sale of the collateral in which a security interest has been perfected. Where the secured creditor has initially perfected its security interest in the collateral more than four months before the filing of the petition, and where the creditor can identify the proceeds to which its security interest has attached, no collision between UCC 9–306(4)(d) and the Bankruptcy Act occurs. *In re Gibson Products, supra* at 655.

■ It is undisputed in the present case that the original security agreement between GMAC and the Debtor was perfected more than four months prior to the date of the petition. The evidence presented by GMAC clearly traces the cash proceeds from the sale of vehicles by the Debtor into the corporate checking account. This evidence, consisting of cash receipt journals, car sale invoices, and bank statements of

---

3. See 4A *Collier on Bankruptcy*, 70.62A[4.3] (14th ed. J. Moore & L. King 1976); Henson *"Proceeds" Under the Uniform Commercial Code*, 65 Colum.L.Rev. 232, 242–53 (1965); Marsh, *Triumph or Tragedy?: The Bankruptcy Act Amendments of 1966*, 42 Wash.L.Rev. 681, 715–17 (1967); Comment, *Toward Commercial Reasonableness: An Examination of Some of the Conflicts Between Article 9 of the Uniform Commercial Code and the Bankruptcy Act*, 19 Syr.L.Rev. 939, 954–55 (1968).

deposits at the Newport National Bank, clearly demonstrates that the major portion of the funds in question was generated by the sale of the vehicles in which GMAC had a perfected security interest. Furthermore, unlike the secured creditors in *In re Gibson Products, supra*, and *Fitzpatrick v. Philco Finance Corp., supra*, the amount of proceeds traceable from the sale of these vehicles that was deposited in the Debtor's bank account within ten days before the filing of the Chapter XI petition clearly and substantially exceeds the cash on hand in the account at the commencement of the Chapter XI proceeding. We find, therefore, that GMAC has a valid security interest in the funds in Debtor's bank account, since they consist of cash proceeds from the sale of collateral in which it had a perfected security interest, and we conclude as a matter of law that the enforcement of said security interest under UCC 9–306(4)(d) is not a voidable preference under § 60a of the Bankruptcy Act.

While the Receiver places principal reliance upon his argument that plaintiff's security interest in the commingled account constitutes a voidable preference, it is also claimed that, to the extent that the original agreement did not cover the cash and bank accounts of the debtor, UCC 9–306(4) is unenforceable because it conflicts with § 67(a) and § 64 of the Bankruptcy Act.

The receiver argues that UCC 9–306(4)(d) creates a statutory lien which first becomes effective upon the insolvency of the debtor and hence is expressly invalidated under § 67c(1)(a) of the Bankruptcy Act which provides:

"The following liens shall be invalid against the trustee: (A) [E]very statutory lien which first becomes effective upon the insolvency of the debtor, or upon distribution or liquidation of his property, or upon execution against his property levied at the instance of one other than the lienor."

The thrust of his argument is that the claimed security interest is a lien established by statute, because the original agreement did not cover monies commingled in the debtor's general account. However, the receiver's argument ignores the definition of "statutory lien" which specifically excludes "any lien provided by or dependent upon an agreement to give security . . . . "[4] 11 U.S.C. 1(29a). The Agreement between the plaintiff and the debtor clearly establishes a security interest and not a statutory lien:

"GMAC's security interest in the vehicles shall attach to the full extent provided or permitted by law *to the proceeds, in whatever form, of any retail sale or lease thereof* by us until such proceeds are accounted for as aforesaid, and to the proceeds of any other dispositions of said vehicles or any part thereof." (Plaintiff's Exhibit # 1 emphasis supplied)

Because GMAC has been able to trace proceeds from the sale of the vehicles into the Debtor's general account, we conclude that its claim to those traceable proceeds is based upon the Agreement, and does not arise under state law.

Our position is consistent with *Elliot v. Bumb*, 356 F.2d 749 (9th Cir. 1966), which the receiver cites for the proposition that state statutory liens not accompanied by possession of or levee upon property subject to lien before filing the petitions of bankruptcy are invalidated. The court noted in that case, however, that "the state statute undertakes to dispense with the beneficiary's need to trace" and, as such represented a disguised priority. *Id.* at 754. *See also, In re Faber's Inc.*, 360 F.Supp. 946, 949–50 (D.Conn.1973). In the present case, even if it could be argued that the lien on the bank accounts arises under state statute, plaintiff has met the additional burden of tracing the proceeds from the sale of the secured vehicles into the general bank account of the debtor.

---

4. A statutory lien is defined in § 1(29a), 11 U.S.C. § 1(29a) as: "a lien arising solely by force of statute upon specified circumstances or conditions, but shall not include any lien provided by or dependent upon an agreement to give security, whether or not such lien is also provided by or is also dependent upon statute and whether or not the agreement or lien is made fully effective by statute."

 

Finally, the receiver argues that even if UCC 9–306(4)(d) is not a statutory lien under § 67c, it nevertheless is a disguised state-created priority which conflicts with § 64 of the Bankruptcy Act, because the security interest in debtor's bank account became perfected only at the onset of the insolvency proceedings, and that absent UCC 9–306(4)(d) the plaintiff would be relegated to the status of unsecured creditor.

■ In our view, most of the considerations which we have found controlling in rejecting § 60 and § 67c objections have similar validity when applied separately to the question whether the priorities established in § 64 are distorted or defeated by respecting GMAC's claim to the traceable proceeds. GMAC's security interest in the funds in the Debtor's bank account did not become perfected at the onset of the insolvency proceeding, but arose by virtue of its security agreement with the Debtor. This security agreement gave GMAC a perfected security interest in proceeds from the sale of the secured vehicles, which GMAC has clearly traced to the Debtor's bank account. GMAC's right to these proceeds, therefore, results from its security agreement with Dexter, and from tracing, and cannot be attributed to a disguised state priority which attempts to give GMAC rights than it would have apart from bankruptcy, *See, Matter of Federal's Inc.*, 553 F.2d 509, 516, 518 (6th Cir. 1977); 2 G. Gilmore, *Security Interests in Personal Property*, ¶ 45.9 at 1337–38 (1965). We therefore conclude that GMAC's title to the traceable proceeds from the sale of the secured vehicles cannot be defeated by § 64 of the Bankruptcy Act, either.

For the reasons stated above, Plaintiff's complaint is granted vis-a-vis the Receiver. There are, however, several other claims asserted against the funds in question that may affect the final distribution of this account. Therefore, as between GMAC and the Receiver, judgment shall be entered for the Plaintiff within ten (10) days in accordance with the terms of this decision, subject, however, to determination of the following matters: Marquette Credit Union v.

Receiver; Dennis Roberts, Attorney General v. Receiver; Brunswick Agency, Inc. v. Receiver; James L. Taft, Jr., Receiver v. Jake Kaplan, Ltd.; and Application of Taft, McSally and McKenna, attorneys for the Receiver, for Interim Allowances.