**In re Carolyn HOLT, Debtor.**

**Carolyn HOLT, Plaintiff,**

v.

**COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF PUBLIC WELFARE, Defendant.**

**Bankruptcy No. 79–1008.
Adv. No. 80–851.**

United States Bankruptcy Court, W. D. Pennsylvania.

May 27, 1981.

Donald R. Calaiaro, Saldamarco & Calaiaro, Pittsburgh, Pa., for plaintiff Carolyn Holt.

Jason W. Manne, Asst. Atty. Gen., Dept. of Public Welfare, Office of Legal Counsel, Harrisburg, Pa., for defendant Dept. of Public Welfare.

## MEMORANDUM OPINION

JOSEPH L. COSETTI, Bankruptcy Judge.

### FACTS

On December 10, 1979 the debtor, Carolyn Holt, filed a petition under Chapter 7 of the Bankruptcy Code. A complaint was filed by the debtor on October 6, 1980 under 11 U.S.C. § 522(f) to avoid a judgment lien against real property of the debtor located at 338 Enright Court, Pittsburgh, PA 15206. The debtor alleges that this lien impairs an exemption to which the debtor is entitled under § 522(d)(1) and (5). On October 10, 1980 the defendant, the Commonwealth of Pennsylvania, Department of Public Welfare (hereinafter "D.P.W.") filed a motion to dismiss the complaint for failure to state a claim upon which relief can be granted.

The Commonwealth presented a brief in support of its Motion to Dismiss. Additionally, the Commonwealth requested an opportunity for oral argument.

On May 15, 1981 the matter was argued. The Commonwealth submitted a second brief and a supplemental brief. The plaintiff submitted a reply brief.

On April 21, 1980, subsequent to the debtor obtaining her interest in the subject real property, a judgment was recorded against her in the Court of Common Pleas of Allegheny County, Pennsylvania at No. G.D. 75–11092 in the amount of $2,000.00. The debtor has received public assistance of one type or another for several years. As of November 30, 1980 the debtor has received $4,885.90 in cash grants. In order to receive assistance the debtor was required by the D.P.W. to sign a Pa–9 Form. The stated purpose of this form, entitled "Reimbursement Agreement", is to give the D.P.W. a lien on any real property owned by the recipient. The Pa–9 form also contains a confession of judgment clause. At present the D.P.W. has one lien against the debtor's real property in the amount of $2,000.00.

Schedule B–1 of the debtor's petition listed the market value of the house located at 338 Enright Court, Pittsburgh, Pennsylvania as $24,500.00. A mortgage of $18,000.00 on the real property is in existence as of the time of filing of this petition. The debtor claimed as exempt $6,500.00 of equity in the real property. There was no objection to the debtor's filing of the $6,500.00 exemption.

### ISSUES

Is the welfare lien a security interest within the meaning of the Code and not a judicial lien?

Is the lien held by the D.P.W. against the debtor's property a statutory lien not subject to avoidance under 11 U.S.C. § 545, or a judicial lien which can be avoided under 11 U.S.C. § 522(f) to the extent it impairs the debtor's exemptions?

If the D.P.W. lien is a judicial lien, does it impair an exemption of the debtor?

Do considerations of federalism bar the application of § 522(f) under Tenth Amendment considerations?

### CONCLUSIONS OF LAW

To determine the status which the D.P.W. lien should be accorded under the Bankruptcy Code, the court must first look to the statutory authorization for this lien and the treatment of the D.P.W. lien in state court.

The D.P.W. lien resulted from the debtor's signing of a Pa–9 Form, "Reimbursement Agreement". The authority for

a Pa–9 Form is derived from 62 P.S. § 1974 entitled "Property of Persons Liable for Expenses Incurred for Support and Maintenance." This statute in pertinent part states:

> (a) . . . the real and personal property of any person shall be liable for the expenses of his support and maintenance . . . if such property was owned during the time such expenses were incurred. . . . Any public body or agency may sue the owner of such property for moneys so expended, and any judgment obtained shall be a lien upon the said real estate of such person and shall be collected as other judgments . . ."

The D.P.W. sought to invoke the remedial provisions of 62 P.S. § 1974 by a "petition and rule" procedure through use of the confession of judgment clause of Form Pa–9. A "petition and rule" is a one party proceeding whereby a party simply files a petition with the court and a ruling or judgment of the court is issued against the other party. A literal reading of 62 P.S. § 1974, which specifically provides "any public body or public agency may sue . . . for moneys so expended," leads to the conclusion that a suit to judgment is required. *Perkins v. Yellow Cab Co.*, 49 Pa.D. & C.2d 297 (1970). The court in *Perkins* said the legislature had intended a more restricted view of the word "sue". The *Perkins* court felt that if the legislature had intended to include "petition and rule" as a means of enforcing the D.P.W. right of action created by 62 P.S. § 1974, the legislature would have so provided. This reasoning is supported by the provisions made by the legislature at § 3 of the Support Law of 1937, 62 P.S. § 1973, specifically providing for "petition and rule" as a means of recovery. Title 62 P.S. § 1973, which provides for the liability of relatives for the support of indigents, was passed by the legislature at the same time as 62 P.S. § 1974. It appears that the legislature was aware of the procedural differences between the two sections and intended to create a unique type of judgment by preventing execution against the home or furnishings during the lifetime of the assisted person, surviving spouse or dependent children. The view by the court in *Perkins, supra*, that the legislature intended to create a right of action specifically requiring a suit to judgment prior to reimbursement, is supported by an earlier decision in *Matter of Hoffman*, 38 Pa.D. & C.2d 577 (1966). In *Hoffman* a young boy from a family receiving aid was struck by a car and damages were awarded. The state sought to recover the benefits of this tort judgment through the use of 62 P.S. § 1974. The court in *Hoffman* took the view that the claim by the state under 62 P.S. § 1974 must be reduced to judgment.

In the case *Comm. Dept. of Public Welfare v. Livingood*, 22 Pa.Cmwlth. 530, 349 A.2d 816 (1976), the court held that the D.P.W. must bring a suit by original process in the Court of Common Pleas in order to recover amounts above the ordinary $2,000.00 lien. In *Livingood, id.*, the parties did not raise the question of whether the amount covered by the $2,000.00 lien must be brought to judgment in Common Pleas court. For this reason the court does not address the question. In *Livingood*, the D.P.W. brought suit to collect reimbursement money owed to the state after a sheriff's sale by a third party. The court followed the reasoning of *Perkins, supra, Ryan v. Hockinberry*, 42 Pa.D. & C.2d 578 (1967), and *Matter of Hoffman, supra*, in holding that a petition for a rule to show cause was not a proper procedure in suits for reimbursement under 62 P.S. § 1974. The court in *Livingood, supra* 349 A.2d at 818, adopted the exact language of Judge Cavanaugh's opinion in *Perkins*, rejecting the D.P.W.'s view that it, the D.P.W., could enforce its rights under 62 P.S. § 1974 by petition and rule as well as a suit to judgment.

In *Ryan*, the court reviewed a related section, 62 P.S. § 1975, which did not specifically provide for recovery through the use of petition and rule, and held that a proceeding by a one party petition was not authorized by the statute and therefore not allowed.

In a recent case, *Shearer v. Moore*, —— Pa.Super. ——, 419 A.2d 665 (1980), the

Pennsylvania Superior Court cites and supports the decision in *Perkins* but lists execution of an "Agreement and Authorization to Pay a Claim" as one of the ways which the state can recover money paid in assistance to a recipient. The Pennsylvania Superior Court stated that the Pa–176K medical assistance reimbursement form (similar to a Pa–9 Form) is merely an affirmation of the statutory liability established by 62 P.S. § 1974. *Congleton v. Pa. D. P. W.*, 48 Pa.Cmwlth. 615, 409 A.2d 1382 (1980). The court cited *Congleton* and stated that the form "does not give the Commonwealth any position other than its rightful one as a common creditor and is not tantamount to legal process." The court did not specifically define what it meant by the use of the term "common creditor".

In the *Congleton* case, *id.*, the court dealt with an attempt by the D.P.W. through the use of a Form Pa–176K to recover benefits due the recipient under a pending Pennsylvania Workman's Compensation claim. Although the validity of the confession of judgment clause was not in issue, the *Congleton* court ruled that "the conditioning of continued eligibility upon the signing of the form (same as in the case of a Pa–9 Form) means that execution of the affirmation is certainly not voluntary."

The only court which allowed the D.P.W. to enforce its claim established by 62 P.S. § 1974 solely by petition and rule was an Orphan's Court. *Garrison's (Minors)*, 64 Pa. Dist. & Co.2d 433 (1974). The judge in *Garrison's* reasoned that petition and rule was sufficient because of the special power of the Orphan's Court to exercise the exclusive and mandatory jurisdiction in the administration and distribution of real and personal property of minors' estates, 20 Pa. C.S.A. § 711 (1972).

The Bankruptcy Code defines three types of liens—statutory liens, judicial liens, and security interests. Section 101(27) of the Code defines a judicial lien as a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." A statutory lien is defined by 11 U.S.C. § 101(38) as a "lien arising solely by force of a statute on specified circumstances or conditions ... but does not include security interest or judicial lien whether or not such interest or lien is provided by or dependent on a statute and whether or not such interest or lien is made fully effective by statute." A security interest is defined in 11 U.S.C. § 101(37) as a lien created by agreement. The court in *In re Brown*, 7 B.R. 479 (M.D.Pa.1980), relying on the legislative history of the Code, H.Rep.No.95–595, 95th Cong., 1st Sess. 312 (1977); S.Rep.No. 95–989, 95th Cong., 2nd Sess. 25 (1978); U.S.Code, Cong. & Adm.News 1978, p. 5787, ruled that "there are three kinds of liens; judicial liens, security interests and statutory liens and these categories are mutually exclusive and exhaustive except in the case of certain common law liens."

The definition of a statutory lien was not substantially changed by enactment of the new Bankruptcy Code. The legislative history of the Code confirms that 11 U.S.C. § 101(38) was to have the same effect as § 1(29a) of the Bankruptcy Act. S.Rep.No. 95–989, 95th Cong., 2nd Sess. 27 (1978); reprinted in 5 U.S.Code Cong. & Adm.News 1979, pp. 5787, 5812 and 5813. Under the old Bankruptcy Act § 1(29a), a statutory lien by definition specifically excluded any lien provided by or dependent upon an agreement to give security whether or not such lien was provided by or dependent on a statute. Congress intended to assure by this section that consensual liens would not be subjected to any of the tests of validity prescribed by § 67(c) which granted special treatment to statutory liens. H.Rep.No.89–686, 89th Cong., 1st Sess. (1966); 2 U.S.Code Cong. & Adm.News 1966, pp. 2442, 2460.

■ If a lien arises by force of statute without prior consent between the parties and does not fit the definition of a judicial lien, it will be deemed a statutory lien. After examining the statutory authority for a Pa–9 Form it is clear, based on the Code definition, that the D.P.W.'s lien is not a statutory lien. By its nature the D.P.W. lien is at best a security interest, because it appears to be an agreement (somewhat involuntary) between the parties or it is a

judicial lien because of the necessity for use of legal process to bring the lien into existence. For these reasons the D.P.W. lien falls into one or both of the exceptions to a statutory lien as defined by 11 U.S.C. § 101(38). *Charleston v. Wohlgemuth*, 332 F.Supp. 1175 (E.D.Pa.1971), dealt with the constitutionality of the D.P.W. requiring the signing of a Pa–9 Form prior to receiving assistance. The court compared the New York State Welfare Department lien and ruled that the Pennsylvania D.P.W. lien is not a statutory lien.

The court in *In re Dexter Buick-GMC Truck Co.*, 2 B.R. 242 (D.R.I.1980) followed the definition in § 1(29a) and ruled that a "statutory lien" specifically excludes any lien provided by or dependent upon an agreement to give security. The court further stated that for a security interest to be present, the lien must be traceable to the property secured. It is evident in the instant case that there is some type of "agreement" between the parties and that the lien existing, as the D.P.W. argues, as of the time of signing, certainly is not traceable to the property. The Pa–9 Form makes no attempt to specifically identify any property.

A bankruptcy case which is very similar to the one at bar is *In re Natale*, 5 B.R. 454 (E.D.Pa.1980). In *Natale*, the debtor received a loan from a police credit union. In order to obtain the loan, the debtor was required to sign a judgment note, a promissory note (with authorization to confess judgment), a consumer credit disclosure statement, and a statement of income in excess of $10,000.00. These forms were filed with the Prothonotary, who issued a *debet sine breve* (hereinafter "D.S.B.") signifying a debt without suit or a confession of judgment. (The D.S.B. is the treatment which the state desires for its Pa–9 Form). In *Natale*, the debtor filed a petition in bankruptcy and sought to avoid the lien. The credit union argued that the lien which arose by confession of judgment and D.S.B. was not a judicial lien but was a security interest which the parties · had agreed should be created. The court in *Natale, id.* at 458, noted the differences between the lien definitions under the Code and stated:

While it is true that under the Code a security interest is a lien created by agreement of the parties, a judicial lien is defined as a lien obtained by other legal or equitable process or proceeding. We interpret that definition to include voluntary judicial process as well as involuntary judicial process.

The *Natale* court concluded that the lien the creditors had by virtue of a confession of judgment against the debtors was a judicial lien. The court ruled that the consumer credit disclosure form did not itself constitute such agreement, although the loan was secured by a separate security agreement on the debtor's real property. The court felt that the disclosure form did not specifically describe what real property was to secure the loan.

In the instant case, as in *Natale*, no lien arose solely by agreement of the parties. To acquire its lien, the D.P.W. at the very least had to file with the Prothonotary and confess judgment; this is judicial process according to the *Natale* court.

Another case with a factual situation almost identical to that of *Natale, In re Porter*, 7 B.R. 356 (E.D.Pa.1980), followed the same line of reasoning in concluding that a judicial lien was present.

 The D.P.W. lien is not a statutory lien. Using the plain language of the Bankruptcy Code and recent court rulings, D.P.W. does not possess a security interest intended by Congress in enacting the Code. There was no voluntary intent of the debtor to create a security interest in his property. Further, to create a security interest under the Code, the intent of the parties must be clear, the property in which the interest is to be created must be described with some degree of specificity, and one must be able to trace the specific property to the writing evidencing the security agreement. The D.P.W. Pa–9 Form is very general and does not describe specific property. The form states only that "my real and personal property is liable for repayment..." Pennsylvania courts have held that this form con-

stitutes only a general acknowledgment of the duty to reimburse the state. We hold that a lien arising under 62 P.S. § 1974 is a judicial lien and therefore is subject to avoidance under § 522(f)(1) of the Bankruptcy Code.

The D.P.W. urges the Court to find that the D.P.W. lien is a security interest because 1) it is not taken as part of the debt collection process; 2) the D.P.W. cannot execute upon its judgment; and 3) debtor has no personal liability on the judgment. For reasons similar to those discussed above, labeling this lien a security interest will not be dispositive of the issue. The lien intended here is a lien evidencing an interest in real property. As discussed above, in order to execute upon real property the D.P.W. lien must be reduced to judgment. It can have no more standing than a judgment by confession. See *Natale, supra.* The requirement of the Pennsylvania Uniform Commercial Code, 13 Pa.C.S.A. §§ 1101–9507, and Pennsylvania law on mortgages, 21 P.S. §§ 621–656, are not met by the welfare lien. It does not qualify as a security interest in specific property and as a lien is avoidable under § 522(f)(1).

The Commonwealth raises considerations of federalism. It asks the Court to consider its interests in the welfare program as being in conflict with federal powers in bankruptcy. The Commonwealth did not present evidence but the information is uniquely in the Commonwealth's possession; thus, for purposes of this argument, the Court will assume that the facts alleged in the Commonwealth's Supplemental Brief at p. 17 are true. It recites that the Commonwealth holds $164 million in welfare liens and that $4 million of these liens are realized annually. The Commonwealth argues that the Tenth Amendment would require this Court to balance interests. It admits that the federal bankruptcy power is plenary. However, it argues that under *Commonwealth v. Liveright*, 308 Pa. 35, 161 A. 697 (1932) the administration of the public assistance program is "in the same position as the preservation of law and order" (Supplemental Brief, p. 16) and that welfare is a plenary state power. Further, the Com-

monwealth argues that under *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), if a federal statute so disrupts a state in the performance of its basic and traditional governmental functions, then the statute will be limited. In *National League of Cities*, the Federal Wage and Hour Law was challenged as it applied to employees of state and local government in their essential functions.

The Commonwealth also urges this Court to be guided by *United Transportation Union v. Long Island Railroad*, 634 F.2d 19 (2nd Cir., 1980). In that case the application of the Federal Railway Labor Act to the State owned LIRR was questioned. The Commonwealth under the teachings of these cases asks this Court to find that § 522(f) so frustrates the scheme of repayment which the Commonwealth chooses to utilize that it should be nonapplicable to the Commonwealth.

The debtor argues that the Commonwealth's obligation to provide welfare involves several billion dollars and that this repayment scheme is a miniscule portion of that system. The debtor argues that the repayment of a miniscule fraction of the total expenditure on welfare in no way frustrates the State welfare scheme. The debtor argues that a Wage and Hour Act is not enacted under an enumerated federal power.

In contrast, the scheme Congress enacted in the Bankruptcy Code of 1978, which creates in § 522(d) a system of federal exemptions which are then further protected under § 522(f) is a central part of that new Code. If a balancing test is to be utilized, the avoiding power of § 522(f) is a central focus of the Code. In contrast, the welfare liens are a very small part of the state's welfare program.

■ We hold that the Commonwealth has not met the burden of demonstrating that the action of § 522(f) so disrupts or frustrates the State in the performance of its welfare function that the § 522(f) power should be limited. Here the plenary powers

of the Congress to enact a bankruptcy code are challenged. A much heavier burden of interference with plenary State powers must be demonstrated if a balancing test is to be invoked. We find none here.