HARLEY–DAVIDSON MOTOR CO., INC. and ITT Commercial Finance Corp., Plaintiffs,

v.

BANK OF NEW ENGLAND–OLD COLONY NATIONAL ASSOCIATION f/k/a the Newport National Bank, Defendant.

Civ. A. No. 86–0291 P.

United States District Court, D. Rhode Island.

Jan. 13, 1988.

Stephen R. White, Providence, R.I., Gordon Shultz, Boston, Mass., for plaintiffs.

James E. Purcell, Providence, R.I., for defendant.

MEMORANDUM AND ORDER

PETTINE, Senior District Judge.

Whereas plaintiffs have moved pursuant to F.R.Civ.P. 56(a) for summary judgment on Count II of their Complaint alleging conversion and whereas defendant has moved pursuant to F.R.Civ.P. 56(b) for the same, this court now determines whether defendant is liable to plaintiffs for conversion. Jurisdiction and venue is proper before this court under 28 U.S.C. secs. 1332 & 1391.

## FACTS

In early 1982, Richard Clemence established a Harley–Davidson motorcycle dealership. Located in Warwick, Rhode Island, this dealership, named "Road N' Racer Cycle", dealt in new and used motorcycles. The new motorcycles were bought from Harley–Davidson Motor Co., Inc., while the used ones were obtained as trade-ins. Clemence financed the purchase of the new motorcycles through arrangements with Harley–Davidson and ITT Commercial Finance Corp. Under his arrangement with Harley–Davidson, the latter sold new motorcycles to Clemence on credit. Under his arrangement with ITT, the finance company paid Harley–Davidson directly for those new motorcycles shipped to Clemence which ITT had agreed to finance. Securing these arrangements were separate agreements with Harley–Davidson and ITT which granted to these two companies security interests in Clemence's inventory and proceeds. While these security interests were perfected by each company through the filing of a financing statement pursuant to the Uniform Commercial Code, these interests were not noted on either the manufacturer's certificates of origin that accompanied the new motorcycles or the certificates of title that accompanied the used ones.

In addition to the financing agreements with Harley–Davidson and ITT, Clemence also entered into a financing arrangement with the defendant, Bank of New England–Old Colony, N.A., during September, 1983. Under this arrangement, Clemence granted Old Colony a security interest in his inventory and proceeds and Old Colony extended to Clemence a line of credit. For each cash advance on this line of credit Clemence had to sign a "Trust Receipt and Promissory Note". Each Trust Receipt identified one or more motorcycles by manufacturer, model and serial number and required Clemence to repay the amount of the advance on demand. Moreover, as a condition on each advance Clemence had to deliver to Old Colony the certificates of origin or title for each of the motorcycles identified on the Trust Receipt. Old Colony retained physical possession of these certificates un-til Clemence repayed the amount of the advance. Between September, 1983, and June, 1985, Clemence received cash advances that totaled $179,541.00. Fulfilling the conditions of these advances, Clemence executed Trust Receipts that identified 53 motorcycles and presented to Old Colony the 53 certificates which referred to them. Old Colony returned 41 of these certificates to Clemence when he repaid $126,617.00 of this total, an amount which equalled the cash advanced on the Trust Receipts that identified the 41 motorcycles to which these certificates referred.

Old Colony first perfected its security interest by filing a financing statement pursuant to the Uniform Commercial Code in September, 1983. Neither Clemence nor Old Colony notified either of the plaintiffs of Old Colony's security interest in Clemence's inventory and proceeds. Moreover, Old Colony did not perform a UCC search until June, 1984, through which defendant discovered plaintiffs' security interests. At this time, Old Colony requested Clemence to obtain a subordination agreement from plaintiffs which Clemence was unable to do. Old Colony filed a second financing statement in December, 1984.

On June 10, 1985, Clemence filed a bankruptcy petition under U.S.C. title 11, chapter 7. After filing, Clemence informed plaintiffs that he had sold a number of motorcycles the proceeds for which he could not account. Of these motorcycles, 7 had been financed by Harley–Davidson and 10 had been financed by ITT. At the time of Clemence's bankruptcy, Old Colony still held 12 of the 53 certificates that Clemence had presented to it. The advances under the Trust Receipts that identified the 12 motorcycles to which these certificates referred totaled $52,924.00. Of these 12 certificates, only two referred to motorcycles financed by ITT and none referred to motorcycles financed by Harley–Davidson. Nevertheless, upon demand these 12 certificates were turned over to Harley–Davidson by Old Colony.

On September 10, 1985, Clemence was discharged from all debts, save one, by the

United States Bankruptcy Court for the District of Rhode Island. Clemence's obligation to ITT was excepted because ITT claimed that Clemence defrauded it. ITT's suit for nondischargeability is pending. Unable to recover their losses in the bankruptcy court, plaintiffs proceeded to file the present action against Old Colony.

### The Security Interests

That both plaintiffs and defendant held security interests in Clemence's inventory and proceeds is not disputed. Clemence signed security agreements with ITT on November 11, 1983, with Harley–Davidson on February 12, 1982, and with Old Colony on September 9, 1983. The question that arises therefore is what priorities exist among these conflicting security interests.

This question can not be resolved by considering which of these security interests had been perfected: all of them had been. ITT, Harley–Davidson, and Old Colony all filed financing statements with the Secretary of State of Rhode Island pursuant to R.I.G.L. (1985 Reenactment) sec. 6A–9–302(1). Filing these financing statements not only perfected their security interests in Clemence's inventory, but also perfected their security interests in identifiable proceeds pursuant to R.I.G.L. (1985 Reenactment) sec. 6A–9–306(2).

■ Accordingly, one must look to the dates of these filings to determine what priorities exist between plaintiffs and defendant. Pursuant to R.I.G.L. (1985 Reenactment) sec. 6A–9–312(5) & (6), conflicting security interests in inventory and proceeds are ranked according to the order in which they were filed or perfected. Under this rule the security interests of the plaintiffs have priority over the security interests of the defendant: ITT filed on March 1, 1982; Harley–Davidson filed on March 12, 1982; and Old Colony filed on September 21, 1983.[1]

Nor can defendant avoid this result by claiming to be a purchase money secured party. Certainly, if defendant were a purchase money secured party, then its security interest would have priority over secured creditors who did not have a purchase money security interest, notwithstanding its being the last to file and perfect his interest. Defendant, however, is not such a party. Of the many obstacles that must be overcome to be classified as a purchase money secured party under R.I.G.L. (1985 Reenactment) sec. 6A–9–312(3), defendant at the very least has not met the notification requirement. Defendant did not notify plaintiffs in writing that he expected to acquire a purchase money security interest in inventory of debtor, describing such inventory by item or type prior to filing his financing statement.

### Conversion

Having established the prior interest of the plaintiffs in Clemence's inventory and proceeds, this court must next consider whether defendant is liable for conversion to plaintiffs.

■ Conversion "is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." Restatement of Torts, Second, sec. 222A. A defendant may be liable for a conversion to three types of persons. He may be liable to a person who at the time of the conversion was in possession of the chattel, id. at sec. 224A, to a person who at the time of the conversion was entitled to immediate possession of the chattel, id. at sec. 225, or to a person entitled to the future possession of the chattel for harm caused to such person's interest in it, id. at sec. 243.

■ For the defendant to be liable to plaintiffs, plaintiffs must belong to one of these three classes. Of these three classes, however, plaintiffs did not belong to the first. They were not in possession of the chattel at the time of the alleged conversion. Nor do plaintiffs belong to the third class. They were never entitled to future possession. Plaintiffs were not entitled to possession at all until Clemence

---

1. While Old Colony filed a second time on December 17, 1984, for purposes of priority this filing is continuous with the first. See R.I.G.L. (1985 Reenactment) sec. 6A–9–303(2).

defaulted and at that time they became entitled to immediate possession. Accordingly, plaintiffs belong to the second class of persons to whom a defendant can be liable for a conversion.

When plaintiffs belong to this second class of persons to whom a defendant can be liable, however, a demand and refusal must be made if defendant obtained possession of the chattel rightfully before a conversion can occur. *Ludwig v. Kowal*, —— R.I. ——, 419 A.2d 297, 303 (1980); *Fuscellaro v. Industrial National Corp.*, 117 R.I. 558, 561–62, 368 A.2d 1227, 1230 (1977); *Terrien v. Joseph*, 73 R.I. 112, 115, 53 A.2d 923, 925 (1947); *Claflin v. Gurney*, 17 R.I. 185, 187, 20 A. 932, 933 (1890). "One in possession of a chattel as bailee or otherwise who, on demand, refuses without proper qualification to surrender it to another entitled to its immediate possession, is subject to liability for its conversion." Restatement of Torts, Second, sec. 237. Because of this rule, this court need not decide whether Old Colony's possession of the certificates constituted conversion of Clemence's inventory. When plaintiffs became entitled to immediate possession of Clemence's inventory and proceeds, Old Colony held only 12 of the 53 certificates given to it. Old Colony held these certificates with the consent of Clemence and therefore possessed them rightfully. Moreover, when plaintiffs demanded possession of these 12 certificates, Old Colony returned them to Harley–Davidson. See Letter of Brian Spero to Stephen White, Exh. OC–8, Memorandum In Support Of Plaintiffs' Motion For Partial Summary Judgment. Accordingly, this court finds that no conversion occurred with respect to the certificates or the inventory to which they referred.

■ This finding leaves only the question of whether the defendant converted the proceeds in which plaintiffs had a superior security interest. As already noted, plaintiffs had a perfected security interest in identifiable proceeds pursuant to R.I. G.L. (1985 Reenactment) sec. 6A–9–306(2). Nonetheless, once Clemence filed his bankruptcy petition on June 10, 1985, plaintiffs'

perfected security interests in these proceeds became more limited pursuant to R.I. G.L. (1985 Reenactment) sec. 6A–9–306(4). This provision states that

(4) In the event of insolvency proceedings instituted by or against a debtor, a secured party with a perfected security interest in proceeds has a perfected security interest only in the following proceeds:

(a) In identifiable non-cash proceeds and in separate deposit accounts containing only proceeds;

(b) In identifiable cash proceeds in the form of money which is neither commingled with other money nor deposited in a deposit account prior to the insolvency proceedings;

(c) In identifiable cash proceeds in the form of checks and the like which are not deposited in a deposit account prior to the insolvency proceedings; and

(d) In all cash and deposit accounts of the debtor, in which proceeds have been commingled with other funds, but the perfected security interest under this subdivision (d) is

(i) Subject to any right of setoff; and

(ii) Limited to an amount not greater than the amount of any cash proceeds received by the debtor within ten (10) days before the institution of the insolvency proceedings less the sum of:

(I) The payments to the secured party on account of cash proceeds received by the debtor during such period; and

(II) The cash proceeds received by the debtor during such period to which the secured party is entitled under subdivisions (a) through (c) of this subsection (4).

This court is cognizant of the claim that the phrase that begins this subsection, "[i]n the event of insolvency proceedings instituted by or against a debtor", may be interpreted to mean "in and only in a bankruptcy proceeding." Under such an interpretation, subsection (4)(d) would not be applicable to a nonbankruptcy civil suit. Nonetheless, this court rejects this interpretation of the subsection. To do other-

wise would be to subvert a fundamental principle of the rule of law, that similar cases be treated similarly. To accept this narrow interpretation of subsection (4)(d) would require this court to apply the rule of this subsection when adjudicating the rights of creditors who appeal a decision from the bankruptcy court, but withhold its application from those creditors who request the same matter to be adjudicated in an independent civil suit. This court will not permit the tyranny of form and the subjugation of substance.

The next question that must be determined, therefore, is which subdivision of subsection (4) applies. According to the affidavit of Clemence submitted by the defendant, "[d]uring the years [he] operated Road N' Racer Cycle, [his] principal operating banking account was a checking account with Old Colony Cooperative Bank, Defendant's predecessor. * * * It was into this account that [he] placed not only income from the sale of inventory of [his] business, but also funds totally unrelated to [his] business. Funds which were the proceeds of sale of motorcycles were intermingled with funds received from sources totally unrelated to the business of Road N' Racer Cycle." Affidavit of Richard Clemence (July 15, 1987), Exh. C, Facts In Dispute Material To Plaintiffs' Motion For Partial Summary Judgment. Clemence also states that "[i]nto that account was deposited virtually all money that [he] was individually able to acquire from any source, and out of that account [he] paid not only Bank of New England [Old Colony, the defendant] and all of [his] other creditors, but also [his] payroll, operating expenses, and all other expenses that [he] had in [his] business." *Id.* Based on these statements it is clear that R.I.G.L. (1985 Reenactment) sec. 6A–9–306(4)(d) must apply to the case at bar.

Under R.I.G.L. (1985 Reenactment) sec. 6A–9–306(4)(d), it matters not whether the cash proceeds are identifiable and can be traced. "[T]he creditor does not have the option to claim a greater sum received pri-

or to the 10 days even if he is able to identify the greater sum as cash proceeds of the collateral." *First National Bank of Amarillo v. Martin,* 48 B.R. 317, (N.D.Tx. 1985). "[T]he intent of the draftsmen of the Uniform Commercial Code in promulgating subdivision (4)(d) of this section was to limit the expense and necessity of tracing proceeds that have been commingled with other funds . . . :" *Matter of Dexter Buick–GMC Truck Co., Inc.,* 2 B.R. 242 (Bankr.D.R.I.1980); see also *Matter of Glaubinger Machinery Co., Inc.,* 58 B.R. 38 (Bankr.D.N.J.1986); *Matter of Critiques, Inc.,* 29 B.R. 941 (Bankr.D.Kan. 1983). The identification and tracing of proceeds is not permitted under R.I.G.L. (1985 Reenactment) sec. 6A–9–306(4)(d).

The central investigation necessary for an application of subdivision (4)(d) in the present case therefore is one to determine "the amount of any cash proceeds received by the debtor within ten (10) days before the institution of the insolvency proceedings". R.I.G.L. (1985 Reenactment) sec. 6A–9–306(4)(d). During the ten days prior to the institution of the insolvency proceedings, defendant received payments from Clemence totaling $21,591.00: payments of $4,133.00 and $3,533.00 on June 7, 1985, of $5,000.00 and $2,925.00 on June 10, 1985, and of $6,000.00 on June 11, 1985. Summary of Old Colony L & D Disbursement Schedule, Exh. OC–7, Plaintiffs' Memorandum In Support of Motion For Partial Summary Judgment. While the dates of the receipt of funds by Old Colony are insufficient to determine with certainty the amount of any cash proceeds received by Clemence within ten days before the institution of the insolvency proceedings, this court will assume that Clemence did not receive any cash proceeds within this period. The court makes this assumption based on a statement of Clemence.[2] Clemence has stated that while "the proceeds of the sales of motorcycles were deposited in that account [referred to above], and that Defendant was paid down on its line of

---

**2.** If any of the parties contest this assumption, the court invites that party to submit a motion to modify within 10 days of the receipt of this opinion. Failure to make such a motion within this period will constitute an admission.

credit from that account, there at times was a substantial intervening period between [his] deposit of such proceeds and the payment down of the line of credit." Affidavit of Richard Clemence (July 15, 1987), supra. Thus, this court finds that plaintiffs were not entitled to immediate possession of any proceeds under subdivision (4)(d) and, therefore, that defendant is not liable for a conversion to them.

### Order

In light of the foregoing, plaintiffs' motion for partial summary judgment is DENIED and defendant's motion for partial summary judgment is GRANTED.

SO ORDERED.