In the Matter of GUARANTEED MUF-FLER SUPPLY COMPANY, INC., f/k/a Guaranteed Muffler Supply Company, Bankrupt.

Roger W. MOISTER, Jr., as Trustee in Bankruptcy, Plaintiff,

v.

NATIONAL BANK OF GEORGIA and Mary M. Hamilton, Defendants.

Bankruptcy No. B79–819A.

United States Bankruptcy Court,
N. D. Georgia,
Atlanta Division.

July 11, 1980.

Roger W. Moister, Jr., Atlanta, Ga., for plaintiff.

Donald J. Goodman, Schwall & Huett, Atlanta, Ga., for National Bank of Georgia.

Jack A. Wotton, Westmoreland, Hall, McGee, Warner & Oxford, Atlanta, Ga., for Mary Hamilton.

## ORDER

A. D. KAHN, Bankruptcy Judge.

Before the court is Plaintiff/Trustee's motion for "judgment on the pleadings regarding the specific issue of law whether the application of Ga. Code § 109A–9–306(4)(d) (1962) shall be limited by National Bank of Georgia's having to trace the proceeds from the disposition of each piece of [property in which NBG holds a valid security interest]." The court will interpret the Trustee's motion to constitute a request for a ruling that would limit a secured party's

proceeds claim under UCC § 9–306(4)(d) [1] to those proceeds which are appropriately identified as having been collected upon disposition of property which is validly encumbered by the secured party's lien. For the reasons outlined below, the court is inclined to grant the Trustee's request.

As explained more fully by court order entered November 27, 1979 (reported at 1 B.R. 324, 27 U.C.C.Rep. 1217), the relationship between the above-named parties was initiated in 1976 when Defendant National Bank of Georgia (NBG) took a security interest in all inventory and accounts owned by a predecessor partnership of the corporate Bankrupt. Some two years later, after the corporation was formed and the assets of the old partnership were transferred to the new entity, Defendant Hamilton took a security interest in all inventory and accounts of the newly formed corporation.

In March of 1979, the corporation filed a petition in bankruptcy, but the lien-holding Defendants and the Trustee could not resolve their conflicting claims to property of the estate. The Trustee, therefore, commenced the above-styled proceeding to resolve the conflict.

Although Defendant Hamilton's lien on property of the estate is subordinate to those claims which NBG validly asserts to the same property (*see* UCC § 9–312(5) and order entered February 6, 1980), the court made clear in its November 1979 order that NBG's lien on property of the estate is limited to the following: (1) partnership accounts and inventory which survived until the date of bankruptcy; (2) proceeds collected by the partnership upon sale of the accounts and inventory; and (3) proceeds collected by the now bankrupt corporation upon *its* sale of partnership property encumbered by NBG's lien. These limitations are imposed upon NBG's lien [2] because NBG failed to obtain a security interest in property of the corporate entity and because no party has urged the court to pierce the corporate veil.

Of tremendous practical significance is the fact that NBG may assert a lien on property which is alleged to constitute proceeds only after it is shown that the property is indeed the fruit obtained upon disposition of NBG's collateral. This requirement is otherwise known as the requirement that proceeds be "identifiable." *Ga. Code Ann.* § 109A–9–306 (1962); *In Re Guaranteed Muffler Supply Co., Inc.,* 1 B.R. 324, 328, 27 U.C.C.Rep. 1217, 1223 (Bkrtcy. N.D. Ga. 1979); *Howarth v. Universal C.I.T. Credit Corp.,* 203 F.Supp. 279, 1 U.C.C.Rep. 515 (W.D. Pa. 1962). *See especially In Re Guaranteed Muffler Supply Co., Inc.,* 27 U.C.C. Rep. 1228 (Bkrtcy. N.D. Ga. 1980).

Since NBG's claim to property of the estate is largely rooted in U.C.C. article 9 proceeds theory, the court declared in its November order that the general U.C.C. restrictions placed upon proceeds rights

---

1. As pointed out by previous order, the 1962 version of the U.C.C. governs the instant case. *See In Re Guaranteed Muffler Supply Co., Inc.,* 1 B.R. 324, 326 n.1, 27 U.C.C.Rep. 1217, 1220 n.1 (Bkrtcy. N.D. Ga. 1979).

The applicable provision provides, in pertinent part, as follows:

(4) In the event of insolvency proceedings instituted by or against a debtor, a secured party with a perfected security interest in proceeds has a perfected security interest

. . .

(d) in all cash and bank accounts of the debtor, if other cash proceeds have been commingled or deposited in a bank account, but the perfected security interest under this paragraph (d) is

(i) subject to any right of set-off; and
(ii) limited to an amount not greater than the amount of any cash proceeds received by the debtor within 10 days before the institution of the insolvency proceedings and commingled or deposited in a bank account prior to the insolvency proceedings less the amount of cash proceeds received by the debtor and paid over to the secured party during the 10-day period.

*Ga. Code Ann.* § 109A–9–306(4)(d) (1962).

2. Defendant NBG may exercise whatever valid lien rights it holds without regard to whether the Bankrupt corporation assumed the debt obligations of the old partnership. *Contra In Re Environmental Electronic Systems, Inc.,* 2 B.R. 583 (Bkrtcy. N.D. Ga. 1980) (Robinson, B. J.). Lien rights in property are simply not dependent upon the existence of a debt relationship between a secured party and the owner of the encumbered property.

should apply not only to NBG's claims to proceeds collected by the partnership, but also to NBG's claims to proceeds collected by the corporate Bankrupt, (otherwise known as the "transferee's proceeds"). One such restriction discussed in the order was the one found in U.C.C. § 9–306(4)(d) (1962) which "eliminates secured parties' rights in cash proceeds which are on hand as of the date of a bankruptcy unless a secured party can show that the cash was collected within ten days before bankruptcy or that the cash was not mingled with [non-proceeds] cash." *In Re Guaranteed Muffler Supply Co., Inc.,* 1 B.R. 324, 329, 27 U.C.C.Rep. 1217, 1224 (Bkrtcy. N.D. Ga. 1979).

That characterization of the nature of U.C.C. § 9–306(4)(d) implicitly answers the question posed by the Trustee's motion. The court's view of § 9–306(4)(d) as a provision which RESTRICTS secured parties' claims to proceeds is an implicit rejection of any interpretation of § 9–306(4)(d) through which secured parties obtain greater lien rights than they would in the absence of § 9–306(4)(d).

Admittedly, at least one court has taken the position that U.C.C. § 9–306(4)(d) "gives the secured creditor a perfected security interest in the entire amount [of cash proceeds] deposited [or received] by the debtor within ten days before bankruptcy without limiting the interest to the amount that can be identified as the proceeds from the sale of the creditor's collateral." *In Re Gibson Products of Arizona,* 543 F.2d 652, 655 (9th Cir.), *cert. denied* 430 U.S. 946, 97 S.Ct. 1586, 51 L.Ed.2d 794 (1976). The *Gibson Products* court elaborated on its position by stating that "with respect to the funds that are not the creditor's proceeds, the creditor has no security interest except that con-

ferred by UCC Section 9–306(4)(d)." `Id.` at 655.

It is this court's position that the *Gibson Products* view misinterprets the language and logic of the UCC proceeds section.[3] Although the *Gibson Products* court ultimately relied upon bankruptcy preference law to invalidate that portion of the secured party's claim to proceeds conferred solely by § 9–306(4)(d), this court is of the opinion that there is absolutely no conflict between § 9–306(4)(d) and the Bankruptcy Act.[4] *Accord Fitzpatrick v. Philco Finance Corp.,* 491 F.2d 1288 (7th Cir. 1974). To create a false conflict in this circumstance is not only to raise complicated questions involving the meaning of a preferential "transfer,"[5] but also to cause unnecessary argument about the extent to which portions of the UCC are to be invalidated as disguised state priorities or voidable statutory liens. *See In Re Dexter Buick—GMC Truck Co.,* 2 B.R. 242 (Bkrtcy. D. R.I. 1980).

The point of departure between the position taken by this court and the Ninth Circuit *Gibson Products* panel is rooted in conflicting views about the very nature of secured parties' rights to proceeds. Such rights are obtained by authority of UCC § 9–306(2), which states that an article nine lien "continues in collateral notwithstanding [an unauthorized] sale, and also continues in any identifiable proceeds . . . ." This important provision makes proceeds claims, by definition, depend upon a showing that the property claimed is identified as the fruit of a sale or other disposition of the original collateral. Thus, a right to proceeds of any kind, whether in bankruptcy or not, arises out of the language of § 9–306(2); the limitations upon "cash proceeds" listed in § 9–306(4)(d)(ii), therefore

---

**3.** Leading commentators have referred to the *Gibson Products* view as "not defensible." J. White & R. Summers, *Uniform Commercial Code* 1016 (2d ed.1980).

**4.** Although the instant case is governed by the old Bankruptcy Act, the proceeds analysis which appears herein is relevant in cases pending under the new Bankruptcy Code. *See especially* 11 U.S.C. § 552.

**5.** The existence of a "transfer" is a prerequisite to the finding of a voidable preference. *See, e. g., First Nat'l Bank of Clinton v. Julian,* 383 F.2d 329, 334 (8th Cir. 1967) (proceeds claims which arose within four months of bankruptcy held not to constitute a transfer, since the proceeds claims which arose during the four-month period were a mere surrogate for the original collateral, in which the secured party had lost its lien).

include, by definition, the identifiability limitations which apply to all claims made to all proceeds.[6] To require that proceeds claims be so limited is consistent with the fact that the exercise of lien rights is confined to specific property which the debtor has chosen to make available as a surrogate for his own performance.

Accordingly, the Trustee's motion is hereby GRANTED. No secured party in this proceeding may claim property of the estate on the basis of U.C.C. article nine proceeds theory unless the property is shown to have been collected upon the disposition of property in which the secured party held a valid lien.

IT IS SO ORDERED.

---

**6.** As the Seventh Circuit has pointed out, state law which governs the creation of consensual liens on personalty "also limits the application [of such liens] to co-mingled proceeds in the event of insolvency . . . ." *Fitzpatrick v. Philco Finance Corp.*, 491 F.2d 1288, 1291 (7th Cir. 1974).