**In re MARK TWAIN MARINE INDUS-TRIES, INC., d/b/a Mark Twain Boat Company, Debtor.**

**Bankruptcy No. 86 B 18104.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

June 28, 1990.

John K. Eggers, Abramson & Fox, Chicago, Ill., for The Boatmen's Nat. Bank of St. Louis.

William A. Brandt, Jr., Chicago, Ill., Trustee.

Daniel A. Zazove, Marilyn I. Kosin, Towbin & Zazove, Ltd., Chicago, Ill., for Trustee.

## MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes to be heard on the motion of The Boatmen's National Bank of St. Louis (the "Bank") for an order directing the trustee William A. Brandt, Jr. (the "Trustee") to turn over to the Bank the sum of $17,334.00.[1] In addition, the Trustee filed a motion to strike the Bank's surreply memorandum in support of the motion for turnover. For the reasons set forth herein, the Court having considered all of the pleadings and exhibits thereto does hereby deny the motion for an order directing the Trustee to turn over the sum of $17,334.00. Moreover, the Court hereby allows the Trustee's motion to strike the Bank's surreply.

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain these motions pursuant to 28 U.S.C. § 1334 and General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. These matters constitute core proceedings under 28 U.S.C. § 157(b)(2)(A), (E) and (0).

## II. FACTS AND BACKGROUND

The facts are undisputed and the parties have waived their rights to an evidentiary hearing. On November 17, 1986, the Debtor filed a Chapter 11 petition.[2] On May 3, 1988, the Court ordered the appointment of a trustee pursuant to 11 U.S.C. § 1104(a). The case was subsequently converted to Chapter 7 on November 3, 1988. The Bank is a secured creditor of the Debtor with a security interest in substantially all of the Debtor's personal property including inventory and accounts receivable. The Bank received no cash proceeds or payments from the Debtor within the twenty days prior to the filing of the petition. In November, 1988, the Bank and the Trustee entered into a stipulation with respect to the Trustee filing a complaint to recover transfers made by the Debtor which were avoidable under 11 U.S.C. §§ 544, 547, 548 and 549. The stipulation was approved by Court order and provides in relevant part:

> The Trustee and the Bank have agreed that *to the extent the Trustee recovers*

---

1. The substance of the relief sought usually requires the filing of a formal adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7001(1). The parties have waived same and proceeded to decision by way of a contested motion procedure under Bankruptcy Rule 9014. In the interest of saving both parties additional costs and expenses attendant to a formal adversary proceeding, and in the interest of judicial economy, the Court will decide the matter notwithstanding the technical non-compliance with Bankruptcy Rule 7001(1).

2. The Honorable Robert E. Ginsberg was originally assigned the case when it was filed in 1986. Thereafter, the case was reassigned to this Judge on January 12, 1988.

*any property which is ultimately determined to be identifiable proceeds of the Bank's collateral* and which is ordered to be turned over to the Bank, that such recoveries will first be utilized to reimburse the Trustee's costs and expenses of recovering such property, including reasonable attorneys' fees, *with the balance to be divided, 50 percent to the Bank and 50 percent to the Trustee.* The foregoing is without prejudice to the rights of the Bank to pursue any claim to recover any of its collateral in any non-bankruptcy forum, and *without prejudice to the rights of the Trustee or the Bank to seek a determination as to whether or not any property recovered by the Trustee constitutes identifiable proceeds of the Bank's collateral.*

(Emphasis added).

Subsequently, on April 19, 1989, the Trustee commenced an adversary proceeding against Sea Sprite Industries, Inc., A.R.F. Landfill Corporation, R.F.S. Enterprises, Inc., Cheetah Boats, Inc., Central Illinois Public Service Co., GTE North, Inc., David Labrecque, Terry Vandgrifft and Weldon Crews, seeking recovery of voidable transfers made by the Debtor prior to the filing of the bankruptcy petition. This adversary proceeding was settled against all the defendants with resulting payments to the Trustee in the total amount of $63,007.76.

On April 5, 1990, the Bank filed the motion for turnover. The Court allowed the parties to file simultaneous memoranda on or before April 16, 1990. The memoranda were subsequently filed on that date. Simultaneous replies were then to be filed by April 30, 1990. On May 8, 1990, oral arguments were heard. Thereafter, the Court set the matter for an evidentiary hearing on June 13, 1990. The Bank filed a surreply in support of the motion on May 24, 1990. The hearing was stricken as a result of the parties agreeing that this matter presented an issue of law and that neither party desired to submit evidence.

## III. ARGUMENTS OF THE PARTIES

The arguments of both parties have focused on the Debtor's general bank account. The Bank claims in the motion for turnover that pursuant to 11 U.S.C. § 552(b) and section 9–306(4)(d)(ii) of the Illinois Commercial Code, Ill.Rev.Stat. ch. 26, para. 9–306(4) (1989), it is entitled to $17,334.00. It arrives at this computed amount by deducting the Trustee's fees and expenses of $28,338.00 from the sum of $63,007.76 which leaves $34,669.00. The Bank asserts under the relevant portions of the stipulation that it is thus entitled to one half of that net amount or $17,334.00.

The Bank's arguments center on the statute itself and conclude that an adequate showing under section 9–306(4)(d) is the following: the aggregate deposits into the Debtor's general account for the twenty day period pre-petition totalled $195,714.85. No right of set-off has been asserted by the depository bank, King City Federal Bank, so no reduction under section 9–306(4)(d)(i) is necessary. Furthermore, no payments were made to the Bank by the Debtor during the twenty day period pre-petition. Therefore, no additional reduction under section 9–306(4)(d)(ii)(I) needs be made. No proof has been submitted of cash proceeds received by the Debtor during the period to which the Bank was entitled under section 9–306(4)(a), (b) or (c). Hence, no additional reduction under section 9–306(4)(d)(ii)(II) has been shown. The aggregate deposits to the account are less than the amount of the Bank's claim, but greater than the amount of the post-petition recoveries made by the Trustee ($63,007.76) subject to the Bank's rights under section 552(b) and the relevant provisions of the stipulation. The Bank concludes that it is therefore entitled, under sections 9–306(4)(d) and 552(b) and the stipulation with the Trustee, to one-half the net proceeds recovered by the Trustee after fees and costs ($67,007.76 minus $28,338.00 = $34,669.00 divided by 2 = $17,334.50). The Bank has not provided evidence tracing any of the deposits into the Debtor's pre-petition general account to proceeds of the sale of its inventory or collection of its accounts receivable collateral. Apparently, in waiving an evidentiary hearing, the Bank concludes no tracing whatsoever on its part is required to satisfy its burden of proof.

The Trustee alleges, however, that the Bank is entitled to nothing, or at best, only $2,835.91, an amount equal to fifty percent of the Debtor's bank account balance as of the date of the petition, inasmuch as the Bank has not furnished any proof tracing some or all of the deposits to its collateral proceeds. The Trustee states that the Debtor's general bank account was at King City Federal Bank. For the twenty day period prior to the filing of the petition, a total of $195,714.85 was deposited in the account. Most was transferred out and as of the petition date, only $5,671.82 remained in the account. Accordingly, the Trustee claims under the tracing theory known as the "lowest intermediate balance rule" that the Bank is at most entitled to fifty percent of that sum or $2,835.91. The Trustee asserts that because the amount in the bank account dipped below the amount of the deposited sums, the Bank's security interest must be traced to proceeds of its collateral in order for the Bank to fully recover its computed amount pursuant to the stipulation.

The Trustee cites several cases for the proposition that section 9–306(4)(d) is subject to the "lowest intermediate balance rule." This rule is based on the principle that dollars are fungible and cannot be easily earmarked once they are deposited into an account. *See C.O. Funk & Sons, Inc. v. Sullivan Equipment, Inc.*, 89 Ill.2d 27, 31, 59 Ill.Dec. 85, 431 N.E.2d 370 (1982). The fact that cash proceeds have been commingled with other funds does not preclude the proceeds from being identifiable. *In re Chicago Lutheran Hospital Association*, 89 B.R. 719, 734 (Bankr.N.D.Ill.1988). The rule presumes that proceeds can be identified once deposited into an account as long as the account balance is equal to or greater than the amount of the proceeds deposited, notwithstanding that other funds may be paid out of the account. *Id.* Once the account balance dips below the amount of the proceeds deposited, the creditor must show that subsequent deposits were made with proceeds of the secured creditor's collateral in order to maintain his prior lien claim. The Bank has the burden of proof to demonstrate that the general account deposits arose directly from the sale or other disposition of its collateral and that these deposits could not have arisen from any other source. *See Chicago Lutheran Hospital Association*, 89 B.R. at 734; *Funk*, 89 Ill.2d at 30, 59 Ill.Dec. 85, 431 N.E.2d 370.

The Bank argues *Funk* is inapplicable because that case construed section 9–306(2) not section 9–306(4)(d)(ii). Instead, the Bank relies on *In re Datair Systems Corp.*, 42 B.R. 241 (Bankr.N.D.Ill.1984). In *Datair*, Judge Eisen imposed a constructive trust on certain accounts receivable without requiring tracing for purposes of a section 506(a) valuation hearing to the limited extent that the secured creditor could demonstrate through documentary evidence, that it had an interest in the account proceeds pursuant to section 9–306(4)(d). *Datair* cited and followed *Fitzpatrick v. Philco Finance Corp.*, 491 F.2d 1288 (7th Cir.1974) and 2 G. Gilmore, *Security Interests in Personal Property* at 1338. *Id.* at 245. The problem with the Bank's reliance on *Datair*, however, is that the Bank is still required to meet the ultimate burden of proof by establishing that at least some of, if not all the items received and deposited by the Debtor were derived from one or more of the categories of the Bank's collateral.

## IV. DISCUSSION

### A. MOTION FOR TURNOVER ORDER

Subsequent to the filing of a bankruptcy petition, the status of a security interest is governed by 11 U.S.C. § 552(b), which provides in relevant part:

if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, rents, or profits of such property, then *such security interest extends to such proceeds*, product, offspring, rents, or profits *acquired by the estate after the commencement of the case to the extent provided by such se-*

*curity agreement and by applicable nonbankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.*

11 U.S.C. § 552(b) (emphasis added).

Section 552(b) provides that if a pre-petition security interest encumbers proceeds of pre-petition collateral, the post-petition proceeds of pre-petition collateral will be subject to the Bank's security interest. Pursuant to section 552(b), applicable non-bankruptcy law and the Bank's security agreement are determinative of whether the $63,007.76 recovered by the Trustee should be considered proceeds subject to the Bank's security interest.

The parties agree that applicable non-bankruptcy statutory law determining the extent of the Bank's security interest in proceeds in the event of a bankruptcy proceeding is governed by Section 9–306(4) of the Illinois Commercial Code, Ill.Rev.Stat. ch. 26, para. 9–306(4) (1989). Section 9–306(4) sets forth the extent to which a secured creditor retains a security interest in proceeds in the event of a debtor's insolvency. Section 9–306(4) provides:

In the event of insolvency proceedings instituted by or against a debtor, a secured party with a perfected security interest in proceeds has a perfected security interest only in the following proceeds:

(a) in identifiable non-cash proceeds and in separate deposit accounts containing only proceeds;

(b) in identifiable cash proceeds in the form of money which is neither commingled with other money nor deposited in a deposit account prior to the insolvency proceedings;

(c) in identifiable cash proceeds in the form of checks and the like which are not deposited in a deposit account prior to the insolvency proceedings; and

(d) *in all cash and deposit accounts of the debtor in which proceeds have been commingled with other funds,* but the perfected security interest under this paragraph (d) is

(i) subject to any right to set-off; and

(ii) *limited to an amount not greater than the amount of any cash proceeds received by the debtor within 20 days before the institution of the insolvency proceedings* less the sum of (I) the payments to the secured party on account of cash proceeds received by the debtor during such period and (II) the cash proceeds received by the debtor during such period to which the secured party is entitled under paragraphs (a) through (c) of this subsection (4).

Ill.Rev.Stat. ch. 26, para. 9–306(4) (1989) (emphasis added).

If a debtor has commingled the proceeds of collateral with other cash or in a deposit account, the creditor must look to section 9–306(4). In order for a security interest to continue in such proceeds, subparagraphs a, b and c of the statute require that the specific types of proceeds described therein be "identifiable." Neither the Bankruptcy Code nor the Illinois Commercial Code defines "identifiable." However, section 1–103 of the Illinois Commercial Code directs that the provisions thereof be supplemented by "principles of law and equity." Ill. Rev.Stat. ch. 26, para. 1–103 (1989). None of the first three subparagraphs of section 9–306(4) apply to the facts of this matter. The dispute between the Bank and the Trustee is over cash proceeds and deposits made pre-petition into the Debtor's general operating account. Thus, section 9–306(4)(a) covering identifiable non-cash proceeds and separate deposit accounts containing only proceeds is inapplicable. Similarly, as a result of someone making various deposits commingled into the general operating account, rather than segregating proceeds for the benefit of the Bank, section 9–306(4)(b) is not controlling. Moreover, apparently no evidence has been discovered concerning any identifiable cash proceeds in the form of checks and the like which were not deposited in an account pre-petition, so section 9–306(4)(c) is not operative.

■ Consequently, section 9–306(4)(d), as limited by (i) and (ii), applies to the matter at bar. Subparagraphs a, b and c to section 9–306(4) all concern the various catego-

ries of "identifiable" proceeds enumerated therein. Section 9–306(4)(d) does not, however, contain the adjective "identifiable." Section 9–306(4)(d) is obviously intended to apply to a bankruptcy dispute over proper determination of the priority of a secured party with a perfected security interest in proceeds of collateral in cases where the collateral has been commingled with other funds in cash and deposit accounts. The authorities who have commented on the section are not uniform in their views of the proper construction of section 9–306(4)(d). *Compare,* 2 G. Gilmore, *Security Interests in Personal Property,* § 45.9 at 1338 (1965); 2 White and Summers, *Uniform Commercial Code,* § 25–10 at 463–468 (3d ed. 1988); Clark, *The Law of Secured Transactions Under the Uniform Commercial Code,* ¶ 6.5 and 10.3 (1980); Duncan and Lyons, *The Law and Practice of Secured Transactions: Working With Article 9,* § 2.05[3] at 2.53–2.54 (1987); *see also* Skilton, *The Secured Party's Rights in a Debtor's Bank Account under Section 9–306(4)(d) of the Uniform Commercial Code,* 1 S.I.U. L.J. 60 (1979).

 Proper application of section 9–306(4)(d) to the facts of this matter raises several questions. First, does the Bank's perfected pre-petition security interest in the Debtor's inventory, accounts receivable, and the proceeds of such collateral extend automatically to all the Debtor's pre-petition bank account deposits for the applicable period in which there was commingling subject to the limits of section 9–306(4)(d)? Second, does the Bank still have the burden of proving that proceeds of some of its collateral were deposited in the Debtor's bank account? Third, if so, to what extent and to what effect? The answers to these questions determine the outcome of this matter. The short answers to the first two questions are "yes." The lack of proof from the Bank compels the following answer to the third question: the Bank's failure to make a showing that any of its collateral proceeds were deposited and commingled, warrants denial of the motion for turnover.

The only documentary evidence furnished the Court, as exhibits to the pleadings, was a copy of the bank statement of account for the relevant period and a listing of the amounts of the deposits into the account made within that period. Although the identity of most of the remitters is listed, no evidence of what any of the remittances were for has been proffered. The Court cannot speculate as to whether any of the remittance items so deposited during the relevant period were payments on account of accounts receivable, purchases for inventory or equipment, or deposits on new items to be manufactured by the Debtor subject to the Bank's security interest. The same uncertainty exists concerning the Debtor's withdrawal of deposited funds from the account. The bank statement shows various checks and counter checks paid out of and debited against the account in various amounts. The Court has no idea of who any of the payees were or for what reasons they were paid.

Significantly, the Court has not been furnished any of the deposit items or checks drawn against the account or any underlying documentation relating thereto such as account statements, invoices, purchase orders or the like. Therefore, no tracing of the Bank's collateral can be made to either the deposits into or the withdrawals from the Debtor's bank account during the twenty day period pre-petition. Copies of the items have not been furnished. Same could have been obtained via subpoena duces tecum. Thus, the Bank has not met its burden under section 9–306(4)(d)(ii) and section 552(b). The Court cannot speculate, as the Bank would have it infer, that due to the fact that some of the deposit remitters were customers of the Debtor, the deposits were in fact payments on account.

Furthermore, the bank account statement shows that the lowest daily balance in the account within the relevant period was $214.43. This amount is less than the amount of the Bank's claimed lien, triggering application of the lowest intermediate balance rule. Accordingly, the Bank has failed to present evidence of any amount of its collateral deposited into the Debtor's operating account or otherwise traced its collateral proceeds. Absent any showing of what were the nature of the deposits

made to the Debtor's account during the relevant period, the Court will not impose a constructive trust under *Datair* in favor of the Bank to attach to the deposits. The Bank has failed to demonstrate through documentary evidence that it has an interest in any of the deposits pursuant to section 9–306(4)(d)(ii).

At least some of the Bank's collateral proceeds must be shown to have been commingled with other funds. Otherwise, the reference to "proceeds" in the first clause of section 9–306(4)(d) is meaningless and the Bank would receive a windfall without proof that any of its collateral proceeds were commingled in the Debtor's account. This result comports with the conclusion reached by White and Summers where the authorities criticize the Ninth Circuit's interpretation of section 9–306(4)(d) in *In re Gibson Products of Arizona*, 543 F.2d 652 (9th Cir.1976), *cert. denied*, 430 U.S. 946, 97 S.Ct. 1583, 51 L.Ed.2d 794 (1977). The *Gibson* court afforded protection under the section to the secured creditor in "any cash proceeds" of the Debtor, not just to the proceeds derived from the collateral of the particular secured creditor. The Court concurs with White and Summers that the protection afforded a secured creditor by section 9–306(4)(d) should be limited to the proceeds of its collateral.

Several recent cases interpreting section 9–306(4)(d) in the bankruptcy context, support the result reached in the case at bar. In *Maxl Sales Co. v. Critiques, Inc.*, 796 F.2d 1293 (10th Cir.1986), the Tenth Circuit in interpreting the Kansas version of the Uniform Commercial Code, concluded that the secured creditor had no right to inventory sale proceeds deposited into the debtor's commingled account. The creditor failed to show what amounts were deposited from sales of its collateral. The majority opinion noted that the Uniform Commercial Code has not eliminated common law tracing provisions. The court specifically noted that under its view of section 9–306(4)(d), the limitations extend to all funds which have been commingled regardless of whether they are identifiable. In the absence of evidence presented as to what amounts, if any, were proceeds of the creditor's collateral commingled with other funds, the *Maxl* court held the creditor had no claim to any of the proceeds. *Id.* at 1301.

In another case, *In Re Barsotti Bros. Bakery, Inc.*, 80 B.R. 745 (Bankr.W.D.Pa. 1987), the court held that the secured creditor failed to meet its burden of proof in a turnover action against the trustee as to proceeds deposited into the debtor's general operating account during the applicable pre-petition period. The court also held that the creditor's attempts to trace funds were inadequate. The evidence showed commingling of the creditor's collateral prior to the applicable statutory period of ten days under Pennsylvania's version of section 9–306(d)(4). In contrast to the lack of evidence in the case at bar, the creditor submitted evidence consisting of a "foot of manila folders filled with copies of checks, bank statements and the Debtor's cash journal for various days." The court declined to sort through what it styled as a "manila menagerie" to perform a tracing determination for the creditor. The court aptly noted that it viewed its role in the procedure as other than an advocate, and declined to ferret out or trace possible proceeds of the creditor's collateral deposited into the debtor's operating account. *See also In re Guaranteed Muffler Supply Co.*, 5 B.R. 236 (Bankr.N.D.Ga.1980).

## B. MOTION TO STRIKE THE BANK'S SURREPLY

On May 30, 1990, the Trustee presented a motion pursuant to Federal Rule of Civil Procedure 12(f) and Bankruptcy Rule 7012(b) to strike the surreply of the Bank. The Trustee claims that the filing of such a pleading after the briefing schedule was closed is an improper procedural tactic. Additionally, the Trustee asserts that the surreply contravenes the pre-hearing order entered by the Court on May 8, 1990. The Court hereby allows the motion to strike the surreply. On May 8, 1990, the Court entered a pre-hearing order which states in relevant part that, "[n]o further pleadings are sought by any party." Based upon the pre-hearing order, the Bank's surreply was improperly filed after the pleadings were closed. Consequently,

same will be stricken as it contravenes the pre-hearing order entered pursuant to Federal Rules of Civil Procedure 16(e) and 37(b)(2)(C), incorporated by Federal Rules of Bankruptcy Procedure 7016 and 9014.

## V. CONCLUSION

For the foregoing reasons, the Court hereby denies the Bank's motion for an order directing the turnover of the sum of $17,334.00. In addition, the Court allows the Trustee's motion to strike the Bank's surreply.

This Opinion is to serve as findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.