Mivzah Realty Corp. 824–36 Montgomery St., 1st Mortgage: 2/14/84
 Brooklyn, NY 2nd Mortgage: 12/2/86

**In re WARDE ELECTRIC
CONTRACTING, INC.,
Debtor.**

**Interchange Bank, Appellant,**

v.

**Warde Electric Contracting,
Inc., Appellee.**

**No. 02 B 22894(ASH).
03 Civ. 4003(WCC).**

United States District Court,
S.D. New York.

April 28, 2004.

Seidman & Associates, L.L.C., Mitchell B. Seidman, Dorit Robbins, of counsel, Hasbrouck Heights, NJ, for appellant Interchange Bank.

Kohler & Barnes, P.C., William R. Kohler, of counsel, Fishkill, NY, for Debtor–Appellee Warde Electric Contracting, Inc.

## OPINION AND ORDER

CONNER, Senior District Judge.

■ Appellant Interchange Bank (the "Bank") appeals to this Court from an Order (the "Order") issued April 2, 2003 by the Bankruptcy Court (Honorable Adlai S. Hardin, Jr., U.S.B.J.) denying appellant's motion to compel payment of $110,550 from the debtor's estate.[1] Appellant's motion was opposed in the Bankruptcy Court and on appeal in this Court by debtor-appellee Warde Electric Contracting, Inc. (the "debtor"). For the reasons stated herein, we affirm the Order of the Bankruptcy Court.

## BACKGROUND

Unless otherwise noted, the following facts are undisputed. The debtor is an electrical contracting company. In 1998, the debtor entered into a contract with RWKS Transit, Inc. a/k/a Railworks Transit, Inc. ("Railworks") to provide electrical work in connection with the rehabilitation of the Jackson–West Street Substation and Circuit Breaker Houses (the "Jackson project" or the "project"). Railworks had previously been retained by the New York City Transit Authority ("NYCTA") to serve as general contractor on the project.

On December 13, 1999, the debtor executed a Purchase Order listing itself as the purchaser from RZS Solutions, Inc. ("RZS") of certain custom alarm units (the "alarm units") for use on the Jackson project. On January 16, 2002, RZS directed an Invoice to the debtor billing the debtor $102,500 for the alarm units and listing the debtor as the party to receive shipment.

On February 15, 2002, Railworks issued a two-party check for $102,500 payable to the debtor and RZS. Shortly thereafter, the debtor endorsed the check and remitted it to RZS as payment for the alarm units. According to both the debtor and the Bank, Railworks agreed to issue the check in partial satisfaction of a $700,000 debt owed to the debtor by Railworks. At the hearing on this matter before the Bankruptcy Court, counsel for Railworks objected to this characterization of the facts and stated Railworks' position that the check was issued solely to secure delivery of the alarm units. (Tr. at 23.) The Bankruptcy Court found that the check was issued to secure delivery of the alarm units, not to pay the debtor for any portion of an outstanding debt. (*Id.* at 25–27, 29–30.) It relied on the relationship of Railworks and RZS as general contractor and sub-subcontractor and on the amount of

---

1. Jurisdiction is based upon 28 U.S.C. § 158(a) which gives this Court "jurisdiction to hear appeals ... from final judgments, orders and decrees" of the Bankruptcy Court. *See In re Integrated Resources*, 3 F.3d 49, 53 (2d Cir.1993) ("[F]or a bankruptcy court order to be final ... the order need not resolve all of the issues raised by the bankruptcy; but it must completely resolve all of the issues pertaining to a discrete claim, including issues as to proper relief.").

 In the Bankruptcy Court, the Bank moved to convert pursuant to Federal Rules of Bankruptcy Procedure 1017(f)(2) and 9014. In addition to its request for conversion of the debtor's case to a Chapter 7 case, the Bank moved for an order requiring the debtor to pay the Bank from funds that became proper-

ty of the estate because the debtor allegedly transferred property in violation of a Stipulation entered into by the parties. Although its claim for payment should have been raised in an adversary proceeding pursuant to Rule 7001(1), *see In re Mark Twain Marine Indus., Inc.*, 115 B.R. 948, 949 (Bankr.N.D.Ill.1990), a bankruptcy court presiding over a contested matter may rule on claims that should have been brought in an adversary proceeding when no objection to going forward in that posture is raised and no procedural prejudice results. *See In re Braniff Int'l Airlines, Inc.*, 164 B.R. 820, 831 (Bankr.E.D.N.Y.1994). The Bank appeals only the Bankruptcy Court's refusal to order the debtor to remit the funds in question, not the denial of its motion to convert.

the check, which was the exact amount owed to RZS for the alarm units, as evidence that the check was issued for payment for the alarm units, not as payment for an outstanding debt. (*Id.* at 11, 13, 27.) The Bankruptcy Court also cited the Bank's and the debtor's failure to offer convincing evidence that the two-party check was issued in partial satisfaction of the outstanding debt. (*Id.* at 31, 51.)

In May 2002, Railworks declared the debtor in default of its contract for work on the project. Pursuant to a performance bond, the United States Fidelity & Guaranty Co. and Fidelity & Guaranty Insurance Co. (collectively "the sureties") retained Heckler Electric to complete the electrical subcontracting for the Jackson project. On June 12, 2002, the debtor filed its Chapter 11 petition.[2] The Bank contends that it has a first priority, perfected security interest in all of the debtor's assets (the "non-cash collateral") and the debtor's accounts receivable (the "cash collateral"), in connection with a $1.6 million loan the Bank extended to the debtor.[3] Sometime after the filing of the debtor's petition, the debtor and the Bank entered into negotiations to allow the debtor to access the cash collateral.

On October 24, 2002, the NYCTA sent a letter to RZS instructing RZS to deliver the alarm units to the Jackson project. On November 5, 2002, the debtor sent a letter to RZS stating that the alarm units were property of the debtor's estate and that failure to deliver them to the debtor would amount to conversion for which RZS would be held liable. Faced with competing claims for the property, RZS did not deliver the alarm units to either party. In December 2002, the debtor, the Bank, the creditors' committee and the sureties signed a Stipulation (the "Stipulation") that provided, *inter alia,* that the debtor could use the cash collateral for six months from the date the Stipulation was "So Ordered." In exchange, the debtor agreed to use its best efforts to get authorization from the Bankruptcy Court to sell the alarm units and to turn over the proceeds from such sale to the Bank. The Bank took the position that had a lien on the alarm units, but agreed to allow transfer of them free and clear of its lien. Finally, the Stipulation provided, "This Stipulation is subject to and conditioned upon approval of the Court." The Bankruptcy Court never approved this Stipulation. (Tr. at 51.)

In contemplation of Bankruptcy Court approval of the Stipulation, the debtor and the sureties entered into an agreement, which was not included in the Stipulation, whereby the sureties agreed to pay the debtor $110, 550 in exchange for the alarm units, which were valued at $102,500, and other equipment valued at $8,050. Although the sureties believed that Railworks had issued the two-party check solely to pay for the alarm units, the sureties were apparently willing to remit the funds because RZS's failure to deliver them to the Jackson project was causing costly delays. According to the sureties, they originally contemplated issuing a two-party check payable to the debtor and the Bank in connection with this agreement.

On December 30, 2002, the Stipulation was presented to the Bankruptcy Court to be "So Ordered." The Internal Revenue

---

2. The debtor's case has subsequently been converted to a Chapter 7 case.

3. The sureties claim a superior interest but have entered into a stipulation with the Bank that would allow the Bank, subject to conditions, to reach the funds at issue if the Bank succeeds with this appeal even if the sureties lien is later adjudged to be superior. As of June 6, 2002, the Bank's claim against the debtor was $1,025,447.76.

Service ("IRS") requested revisions and the presentment date was adjourned to January 22, 2003. On January 16, 2003, the sureties wired $110,550 to the debtor, who subsequently used the funds in its operations. The Stipulation was not presented on January 22, 2003. Instead, on February 21, 2003, the Bank moved by an Order to Show Cause for, *inter alia*, an Order compelling the payment of $110,550 from the debtor's estate. At the hearing on the matter, the Bank argued that it had a lien on the alarm units because they were property of the estate and the Bank should have received the sale proceeds pursuant to the Stipulation.[4] Even if there was no lien on the alarm units, the Bank argued, the Stipulation was a contract that required the debtor to remit the proceeds it received from the sureties to the Bank.

The Bankruptcy Court concluded that the Bank did not have a lien on the alarm units because they were never property of the estate. Accordingly, it refused to "So Order" the Stipulation because the debtor did not have the right to sell the alarm units. Furthermore, the Bankruptcy Court held, the Stipulation was not an enforceable contract because it was never "So Ordered"; because the funds were already paid by the sureties to the debtor and subsequently spent without an enforceable contract in place, the debtor was not required to remit the funds to the Bank.[5] Finally, the Bankruptcy Court ordered that the alarm units be delivered from RZS directly to the Jackson project.

---

4. The Bank argues that the funds were cash collateral because the alarm units were noncash collateral that was converted into cash. *See In re Earth Lite,* 9 B.R. 440, 443 (Bankr. M.D.Fla.1981) ("Whenever non-cash collateral is liquidated, the resulting proceeds are cash collateral so long as the proceeds remain subject to the original lien.").

## DISCUSSION

### I. Standard of Review

██ On an appeal from the bankruptcy court, the district court cannot set aside the bankruptcy court's findings of fact unless those findings are clearly erroneous. *See* FED. R. BANK. P. 8013; *In re Dawnwood Props./78,* 209 F.3d 114, 116 (2d Cir. 2000). The bankruptcy court's legal conclusions are reviewed *de novo. See Dawnwood Props./78,* 209 F.3d at 116; *see also Mid–Island Hosp. Inc. v. Empire Blue Cross & Blue Shield,* 276 F.3d 123, 126–28 (2d Cir.2002) (when the bankruptcy court's factual findings are uncontested, the determination of whether property is property of the estate is reviewed *de novo*); *In re Renshaw,* 222 F.3d 82, 86 (2d Cir.2000) (bankruptcy court's legal conclusions are reviewed *de novo*).

### II. Whether the Alarm Units Were Property of the Estate

The Bank argues that the Bankruptcy Court erred in holding that the alarm units were not property of the estate because: (1) the debtor issued the Purchase Order; (2) the debtor was listed as the party to receive shipment on RZS's invoice; and (3) Railworks issued the two-party check for the alarm units in partial satisfaction of an outstanding debt. (Appellant Br. at 18–19.) Although the Bank's version of the facts generally is not disputed by the debtor, the Bankruptcy Court rejected the Bank's contention that Railworks issued the two-party check to pay a debt owed to the debtor. The determination of whether

---

5. The Bankruptcy Court also denied the Bank's motion to convert and ordered that several Debtor In Possession Accounts be created to protect the cash collateral and allow the debtor to pay certain creditors so that it could remain in business.

the alarm units were part of the debtor's estate hinges upon this factual determination. However, in its Appellate Brief, the Bank has not addressed this finding of fact or set forth a single argument to support reversal of the Bankruptcy Court's finding.

■ In their moving papers and at the hearing regarding this matter, the Bank and the debtor offered little more than the statements of their respective counsel to support their contention that Railworks issued the two-party check in partial satisfaction of an obligation to the debtor. The Bankruptcy Judge rejected their representations because he concluded that Railworks was issuing the check, in its capacity as a general contractor, to secure delivery of the alarm units from a sub-subcontractor, not to pay the debtor for work performed. This conclusion was quite reasonable, especially in light of the fact that the check issued by Railworks was for $102,500, the exact amount that RZS billed for the alarm units, and the Bank's and the debtor's failure to put forth any persuasive evidence tending to show that the check was issued in partial satisfaction of a pre-existing debt. Therefore, the Bankruptcy Court's finding that Railworks did not issue the two-party check to pay the debtor for work it performed was not clearly erroneous. *See Werbungs Und Commerz Union Austalt v. Collectors' Guild Ltd.*, 147 B.R. 317, 322 (S.D.N.Y.1992) (affirming the bankruptcy court's findings of fact on issue of whether certain property was property of the estate because the findings were made after a full hearing and the parties seeking reversal had failed to offer sufficient evidence establishing that the findings of fact were clearly erroneous).

■ Having found that Railworks issued the check solely to pay for the alarm units, the Bankruptcy Court correctly concluded that the Bank did not have a lien on the alarm units because they were not property of the estate. The property of a debtor's estate includes "all legal or equitable interests of the debtor as of the commencement of the case." 11 U.S.C. § 541(a)(1). Property held by a debtor merely as a bailee or an agent for a third-party is not property of the estate within the meaning of § 541(a)(1). *See* COLLIER ON BANKRUPTCY § 541.06 (15th Ed.2004). Property of the estate also does not include "any power that the debtor may exercise solely for the benefit of an entity other than the debtor." *Id.* 11 U.S.C. § 541(b)(1). In the present case, the debtor had no legal or equitable interest in the alarm units because Railworks used its funds to pay for the alarm units and did so only to secure delivery of the alarm units, not to pay any portion of monies owed to the debtor. Furthermore, the debtor cannot claim a possessory interest in the alarm units because the debtor never came into possession of them and, even if it had, it was obligated to turn them over to Railworks. Therefore, the alarm units were never property of the estate.

The Bank argues that even if we conclude that the alarm units themselves were not property of the estate, the Purchase Order and Invoice were an executory contract subject to the Bank's lien. Because this argument was not raised below, we will not address it on appeal. *See Boggs v. West*, 188 F.3d 1335, 1337–38 (2d Cir.1999) ("As a general rule, an appellate court will not hear on appeal issues that were not clearly raised in the proceedings below."). However, even if the Purchase Order and Invoice were an executory contract subject to the Bank's lien, that lien had no monetary value because the debtor was obligated to deliver the alarm units to Railworks if it came into possession of them. The fact that the sureties were willing to pay the debtor for the alarm units does not

indicate otherwise; the sureties were willing to pay because the debtor's wrongful claim of a proprietary interest in the alarm units was causing costly delays, not because the debtor had an asset of value to the sureties. (Tr. at 26.)

### III. *Whether the Stipulation is an Enforceable Contract*

 Finally, the Bank contends that the Bankruptcy Court erred by failing to enforce the Stipulation because it was a contract requiring the debtor to pay the Bank the money it received from the sureties. If the existence of a contract is expressly conditioned upon the occurrence of an event and that event does not occur, there is no binding agreement or duty to perform. *See* FARNSWORTH ON CONTRACTS § 8.2 (2d Ed.2001). The Stipulation unambiguously conditions the parties' duty to perform under it upon the Bankruptcy Court's approval in paragraph 26 which provides: "This Stipulation is subject to and conditioned upon approval of the Court." The Bankruptcy Court refused to approve the Stipulation because the alarm units were not property of the estate. (Tr. at 31.) Thus, the Stipulation was not binding upon the parties and the debtor had no duty to perform under it. Furthermore, inasmuch as the Stipulation purported to authorize the transfer of property of the estate free and clear of a lien, it would have required Bankruptcy Court approval even absent the conditional clause. *See* FED. R. BANK. P. 6004(c); *cf. In re Dombroff,* 192 B.R. 615, 622 (S.D.N.Y.1996)

(holding that "[a] stipulation is ineffective to extend time to file objections to discharge unless 'so ordered' by the court.").

The Bank contends, without citation of authority, that the fact that the Stipulation was never "So Ordered" is irrelevant because the Bankruptcy Court withheld its approval only because the debtor wrongfully diverted the funds. We disagree with the Bank's characterization of the holding below. The Bankruptcy Judge continually stated that he would not approve the Stipulation because the alarm units were not property of the estate. (Tr. at 29, 31, 51.) Implicit in the reasoning of the Bankruptcy Court was its refusal to order that wrongfully obtained funds be remitted to a party other than the party from whom they were wrongfully obtained. While the Bankruptcy Judge also stated that he would not approve any Stipulation that required payment of the $110,550 to the Bank because those funds had already been spent, this statement was in reference to his position that any future cash collateral agreement could not require payment of the identified funds to the Bank because those funds were no longer in the debtor's possession. (*Id.* at 51.) Stated differently, if the Bank wanted a cash collateral order, it would have to settle on different terms because the $110,550 was gone. *See In re Cross Baking Co.,* 818 F.2d 1027, 1029 (1st Cir.1987) (holding that a cash collateral agreement was unenforceable because the bankruptcy court never entered a cash collateral order).[6]

---

**6.** The Bank's argument that we should disregard the fact that the Stipulation was never "So Ordered" because the IRS filed its objections in a belated fashion, is similarly unpersuasive. First, there is no indication that the Stipulation would have been "So Ordered" but for the IRS's objections. (Tr. at 31.) Second, why the condition failed is of no consequence where there is no indication that one of the parties to the agreement prevented its occurrence in contravention of the agree-

ment. *See Cross & Cross Props., Ltd. v. Everett Allied Co.,* 886 F.2d 497, 502 (2d Cir.1989) (noting that in order for a condition to be excused on the grounds that its occurrence was wrongfully interfered with, the interfering party must have breached its duty of good faith and fair dealing under the contract). In the present case, there is no indication that the debtor invited the IRS to file improper objections.

Accordingly, we conclude the Bankruptcy Court correctly ruled that the Stipulation was not a binding contract and that the debtor was not required to remit funds under it.

### CONCLUSION

For the reasons stated herein, the Order of the Bankruptcy Court is affirmed in all respects.

SO ORDERED.